| 102 | 583 |
| 106 | 240 |

# DAVID BROCK v. THE DWELLING HOUSE INSURANCE COMPANY.

*Fire insurance—Conditions of policy—Appraisal—Right to bring suit.*

1. After proofs of loss have been made, it is the duty of a fire insurance company, within a reasonable time, to make manifest its disagreement with the amount claimed by such proofs.

2. A condition in a fire insurance policy that a loss thereunder shall not become payable until 60 days after the notice, ascertainment, estimate, and satisfactory proof of the loss required in the policy have been received by the company, including an award by appraisers when appraisal has been required, makes such appraisal, when required, a condition precedent to the right to sue; and the company has a reasonable time within the 60 days after proofs of loss have been furnished in which to move with respect to the ascertainment or estimate of the loss.

3. A policy-holder made his proofs of loss, and, without waiting for any action by the company, asked for the appointment of appraisers, and they were appointed. And it is held that the insured cannot be heard to say that, inasmuch as no effort, had been made by the parties looking to an adjustment, the appointment of appraisers was premature, and that an appraisal must be regarded as having been required within the language of the policy.

4. Where the conduct of the appraiser appointed by the company in refusing to agree on an umpire is inexcusable, and virtually amounts to a refusal to proceed with the appraisement, the fact that the appraisement was not concluded before suit was brought will not bar an action on the policy. So held, where the company selected as its appraiser an insurance adjuster who resided in a city 135 miles distant from the city where the fire occurred, and where the appraiser selected by the insured resided. The two appraisers disagreed as to the selection of the third appraiser. The company's appraiser suggested the names of three persons, residing at a distance from the place where the fire occurred, and the appraiser for the insured offered the names of 12 residents of the locality from which the jury, in case of a suit, would be drawn. The

appraiser for the company assigned no valid reason for a refusal to accept one of the 12, the only reason given being that he did not care to take the chances of getting an appraiser that would be partial

Error to Bay. (Maxwell, J.) Submitted on briefs October 24, 1894. Decided December 7, 1894.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Shepard & Lyon,* for appellant.

*Pratt, Van Kleeck & Gilbert,* for plaintiff.

McGrath, C. J. The policy upon which suit is brought contains the following provisions:

" This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality. Said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided; and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable 60 days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. It shall be optional, however, with this company to take all or any part of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time, on giving notice, within 30 days after the receipt of the proof herein required, of its intention so to do; but there can be no abandonment to this company of the property described. * * *

" In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two

competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire. The appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall be *prima facie* evidence of the amount of such loss. The parties thereto shall pay the appraiser respectively selected by them, and shall bear equally the expenses of the appraisal and umpire.

" This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal, or to any examination herein provided for; and the loss shall not become payable until 60 days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required.      *      *      *      *      *

" No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within 12 months next after the fire."

The property insured consisted of a dwelling-house. The loss occurred July 25, 1892. After the fire, the company's agent visited the locality, and had a conversation relative to the loss. An offer was made by the agent, which, in view of the subsequent correspondence, must be regarded as an offer of compromise, rather than an acknowledgment of liability on the part of the company, or an estimate of the amount of the loss. At this interview, a proposition was made to have an appraisal, but the company's agent said that he didn't propose or didn't care to arbitrate the matter.

On August 16, 1892, the company wrote to plaintiff as follows:

" On the 6th inst., instead of receiving a call from you, I had one from Mr. Van Kleeck, who said he was your

attorney in the matter of your claim under policy 731,375. That there be no misunderstanding in this matter, I would remind you that in my conversation with you I did not state what position the company would take in the matter, and did neither admit nor deny liability on the part of the company in your favor. Neither did I in my conversation with Mr. Van Kleeck admit or deny such liability. Reserving to the company all its rights under the policy, I remain."

Again, on August 30, the company wrote:

"Yours of the 17th inst. at hand, inclosing affidavit of David Brock *in re* claim under policy 731,375. Whether the policy was valid or void at the time of the fire, I do not wish to be understood as expressing any opinion, either directly or by implication. In case of a policy void at time of the fire, no form of affidavit, however fully it might set forth the facts, would be operative to inject validity into the claim; whereas, if it were valid at time of fire, an affidavit in manner and form like the one referred to would not be a compliance with the requirements of the policy, to which I refer you. As this affidavit, therefore, could in neither contingency have any force or effect, I return the same without either demanding or waiving full compliance on the part of the insured with the requirements of the policy.

"Neither admitting nor denying liability on the part of the company, nor waiving or extending any of the terms, provisions, conditions, or requirements of the policy, I remain."

On September 1, 1892, plaintiff sent on proofs of loss, and in the letter suggested an appraisal of the property. On September 9 plaintiff wrote again, asking for a reply to the letter of the 1st. On September 12, defendant wrote as follows:

"I would say that the company is willing to have the value of the building at the time of the fire appraised, as per the terms of the policy, with the understanding that in so doing it reserves all its rights in the matter, and that nothing so far done is to be construed as a waiver of its rights under the policy, nor an acknowledgment of any liability on its part in favor of Mr. Brock."

On September 13 plaintiff replied, naming one Callender as appraiser. On September 16 defendant wrote, objecting to Callender, and saying:

"*If you want an appraisal,* you must, in accordance with the policy, select a competent and disinterested man."

On January 12, 1893, plaintiff wrote as follows:

"Messrs. Shepard & Lyon, on inquiry from them yesterday, say that they have done all, in the insurance matter of David Brock's claim under policy 731,375 against your company, that they are authorized to do. We have furnished all information we have in regard to the loss. Mr. Brock has presented himself for examination under oath, at your request. It seems to us that the only thing necessary to make this matter complete is for you to send us draft and take up your policy. As to the matter of appraisal suggested to you in ours of September 13, we desire to say that, so far as Brock is concerned, he has no desire to insist or oppose an appraisal. We have waited since that date for you to act in that matter if you desire so to do. We now say, as we understand the matter, Brock is entitled to his money, and if we do not hear from you at once, with draft inclosed, we shall conclude that you are in possession of some fact which you conclude is a complete bar to his right to make such claim. As to such matters, if any, others than us must decide."

In reply defendant wrote:

"I would say that an appraisal *was demanded by Mr. Brock,* agreed to by the company with the understanding that it would not in any event prejudice its rights under the policy, and should not be a waiver of any of the conditions of the policy, or of a forfeiture thereof (see the conditions of the policy, lines 92 and 93, Mich. Stand., cited in a former letter to you), and we have for some time been waiting for Mr. Brock to name an appraiser,— some person possessing the attributes required of him by the policy. We are still waiting for Mr. Brock to name his appraiser, and prefer that he abide by his election to submit the matter to appraisal, as provided by the policy."

On January 18, 1893, plaintiff wrote nominating one

Huntley as appraiser, and on January 24 defendant wrote nominating one Hilton, an insurance adjuster residing at Grand Rapids. On February 1 plaintiff wrote as follows:

" Pursuant to your letter of January 24, '93, Mr. Charles A. Hilton came here on the 27th of January, and he, together with Mr. Huntley, signed a declaration to appraise the property insured under the Brock policy. They then endeavored to agree upon an umpire. We understand that Mr. Hilton objected to any person from this county to act as such umpire. At any rate, they were unable to agree on one, and did nothing on that day. Mr. Hilton went away, saying he would return January 31, and complete the matter. Mr. Huntley came that day, and waited the whole of the day for Mr. Hilton, and again to-day. Your Mr. Hilton has not appeared, and no word has been received from him in regard to the matter at all. We therefore conclude you have determined to abandon the matter of appraisal. We shall therefore expect a decided answer whether you now propose to pay the claim made under the policy."

On February 3 defendant wrote that the general agent was out of the city, but that Hilton had been communicated with. On February 5 Hilton wrote Huntley, submitting the names of three persons, one a resident of Grand Rapids, another of Lansing, and one Patzer, of Saginaw. Huntley replied, submitting the names of 12 residents of Bay City, and saying:

" I don't think it necessary to go outside of Bay City in order to find an impartial and honest contractor and builder to act as umpire in case we don't agree, and take the liberty of sending you this list to choose from. Any one of them will be acceptable to me. The most of them are strangers to me, being known only by sight and reputation. I am willing to throw out those that are acquainted with me or acquainted with the facts in any way, and send you list hoping you will find some one who will be acceptable to us both."

On February 11 Hilton wrote Huntley as follows:

" I do not question the honesty, ability, or integrity of

any contractor in Bay City, but, not being acquainted with any of them, I consider the chances of getting one that would be partial in his ruling and decisions. I do not care to take the chances, and cannot consent to the selection of an umpire from Bay City or West Bay City. We certainly ought to be able to find some one outside that would be satisfactory to both of us. When we can agree upon such an one, I am ready to proceed. If you cannot accept any one of the names that I proposed, you can make a list of from three to six names, selected from different localities, and submit to me, and I will see if there is not some one of them that I can accept."

Huntley replied as follows:

"Not being acquainted with the gentlemen you name in yours of February 5, or their business standing, I don't care to take the chances; and, knowing by reputation the names on the list I sent you on February 7, I think a judicious selection can be made from them."

Nothing further was done, and on February 16, 1893, suit was commenced.

On February 11 defendant's general agent wrote, alleging his absence from the city when plaintiff's letter of the 1st. was received, and saying:

"I write Mr. Hilton to-night inquiring as to his version of the story. My impression is that you would like to deprive us of the privilege of a fair appraisal under the policy by refusing to agree to any fair proposition that might eminate from Mr. Hilton, but I mean that, if we have any rights under the policy, they shall be maintained. *You will bear in mind that the demand for appraisal came originally from you.*"

To the declaration herein, defendant pleaded the general issue, with notice that upon the trial it would insist in its defense that plaintiff had failed to comply with the terms of the policy, and that said policy was inoperative and void, and the defendant released from all liability thereunder, for the following reasons:

"*First.* That the plaintiff was not the sole and unconditional owner of the property insured, free from all liens.

whatever, but that one William Brock had an interest and ownership in said property as well as said plaintiff at and previous to the time of said fire, whereby said policy became void.

"*Second.* This defendant will show that the said policy became inoperative and void, and that plaintiff is not entitled to maintain action or suit upon said policy, for the reason that there was a disagreement as to the amount of loss under said policy, and the amount of said loss is required by the terms of said policy to be ascertained by two competent and disinterested appraisers, and because the amount of the loss has not been so estimated or appraised, and no award has been made by any arbitrators as to the amount of such loss, and therefore the plaintiff is not entitled to maintain this action for loss under said policy.

"*Third.* Because this defendant has 60 days after such appraisal and adjustment of loss under said policy in which to pay the same, and that such term of 60 days has not yet elapsed since any appraisal and adjustment of the amount of said loss has been had."

At the close of the proofs, defendant's counsel requested the court to instruct the jury that plaintiff had not established title to the property; that the policy appeared to have been transferred to plaintiff, whereas the conveyance was made to William and David Brock, and thereafter William conveyed to David, a notation of which did not follow on the policy, and a knowledge thereof was not brought home to the defendant; and that, inasmuch as arbitration proceedings had been agreed upon and were pending, and arbitrators were, on the day that the suit was brought, negotiating with reference to the selection of an umpire, the action was prematurely brought, and plaintiff could not recover. The court, however, instructed the jury that—

"An agreement to arbitrate prevents the commencement of suit while the agreement is in force, and the parties are actually acting under it. An agreement to arbitrate will take a suit already pending out of court, but, if they fail to act on it, still the suit may be maintained. In this

case, the policy provides that the insured shall select one man, and the company select another man, and that they two shall pick a competent, disinterested party for an umpire. You have heard what the letters say in regard to that subject, and you have heard the testimony of the witnesses. Now, in order to have an arbitration of any effect, both parties must conduct themselves with absolute fairness. You have heard the negotiations between the two arbitrators, and that they did not agree. Unless an arbitration has gone farther than merely the appointing of the two men and their efforts to agree upon a third party, after the lapse of time that elapsed after this fire, and before the commencement of this suit, I charge you that the clause for an arbitration is not a bar to this action."

The provisions of this policy are evidently intended to enable the parties thereto to agree between themselves as to the amount of the loss, and, in the event of a failure to agree, to submit the same to arbitration. After proofs of loss have been made, it is clearly the duty of the company, within a reasonable time, to make manifest its disagreement with the amount claimed by such proofs. The policy expressly provides that—

"The loss shall not become payable until 60 days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers, when appraisal has been required."

This provision makes such appraisal, "when required," a condition precedent to the right to sue. The defendant has a reasonable time within the 60 days after proofs of loss have been furnished within which to move with respect to the ascertainment or estimate of the loss. Had the time elapsed and no move been made in that direction, the plaintiff would undoubtedly have had the right to bring suit. In the present case, however, plaintiff, with his proofs of loss, and without waiting for any action by the company, prompted undoubtedly by what had occurred between the parties before proofs of loss had been furnished,

asked for the appointment of appraisers, and they were appointed. The plaintiff cannot now be heard to say that, inasmuch as no effort had been made by the parties looking to an adjustment, the appointment of appraisers was premature. An appraisal must be regarded as having been required within the language of the policy.

Another question, however, presents itself. The terms of the policy do not contemplate, in case of a disagreement between the parties, that partisans shall then be appointed as appraisers. It is contemplated that the two appraisers appointed may agree, but the parties themselves are as likely to agree as two persons selected because of individual bias. As is said in *Bradshaw v. Insurance Co.*, 137 N. Y. 137, the term "disinterested" does not mean simply lack of pecuniary interest, but requires the appraiser to be one not biased or prejudiced. The defendant selected as its appraiser an insurance adjuster residing at Grand Rapids, a point 135 miles distant from the place where the fire occurred. The two disagreed as to the selection of an umpire. Defendant's appraiser then suggested the names of three persons, one of whom resided in Grand Rapids, another at Lansing, and the third at Saginaw. The agreement does not contemplate that the umpire shall be selected at random, or without some knowledge on the part of both appraisers as to his competency and fitness. Parties living in the locality would naturally be best qualified to pass upon the question of values, and an appraiser would not be under obligation to make trips to other localities than that of the fire to ascertain as to the propriety of appointing the person suggested as an umpire. The agreement contemplates an inexpensive method of settlement. Strangers to the locality are not usually selected as appraisers, and, in case of the inability of the appraisers to agree, a third party known to both, and in whom both have confidence, is supposed

to be selected. An investigation as to the parties named by defendant's appraiser would have been productive of expense and delay. The fact that defendant selected a person who resided 135 miles distant, and who, for that reason, was unacquainted with the residents of the locality of the loss, and was not competent to judge of their fitness, does not affect the reasonableness of the rule, and did not impose the duty of travel and investigation upon the appraiser appointed by plaintiff. The facts are not disputed. Defendant's appraiser insisted upon the appointment of a person with whom he was presumably acquainted, who was a stranger to the locality and to plaintiff's appraiser. The latter offered the names of 12 residents of the locality from which the jury, in case of suit, would be drawn. No valid reason is assigned for a refusal to accept one of the 12, and the only reason given is that he did not care to take the chances of getting one that would be partial. The requirement that plaintiff's appraiser should go into other portions of the State to make inquiry as to the fitness of the persons named was not a reasonable one. The suggestion that some one be selected from the locality of the fire was not unreasonable. It is well settled that where the conduct of the company's appraiser in refusing to agree on an umpire is inexcusable, and virtually amounts to a refusal to proceed with the appraisement, the fact that the appraisement was not concluded before suit brought will not bar an action on the policy. *McCullough v. Insurance Co.*, 113 Mo. 606; *Bishop v. Insurance Co.*, 130 N. Y. 488; *Uhrig v. Insurance Co.*, 101 Id. 362; *Bradshaw v. Insurance Co.*, 137 Id. 137. In the McCullough case the court say:

"The appraisers could not agree as to the value of the property destroyed or the amount of damages sustained, nor could they agree on the third man. McGraw then

suggested the names of four or five persons, some of whom resided in the county, some at Boonville, and some at other points not far distant. White would not agree to either of them, and suggested the names of some others, living in St. Joseph, Kansas City, and St. Louis, at least 200 miles distant from where the fire occurred. McGraw would not agree to any of the persons suggested by White. White then left for Louisville, Kentucky, and did not return again. McGraw's objection to the persons suggested by White was because of the remoteness at which they resided from the place of the fire, and their want of knowledge of the value of the property in that locality, but White would not agree to any other person. His testimony was not taken in this case, nor is there any excuse offered for his refusal to accept some one of the persons as umpire that were suggested by McGraw. His course under the circumstances, to say the least of it, is not to be commended, was unreasonable, unjust, and tantamount to a refusal to proceed with the appraisement. Justice and fair dealing did not require the plaintiffs to wait longer than they did before instituting their suit."

The judgment is therefore affirmed.

The other Justices concurred.