CHAPMAN, Respondent, vs. ROCKFORD INSURANCE COMPANY and others, Appellants.

*February 6 — March 5, 1895.*

*Insurance against fire: Standard policy: Appraisal: Condition precedent to action: Waiver: Bad faith of insurer: Failure of appraisal: Amount of loss, how determined.*

1. Under the Wisconsin standard fire policy (providing that in case of disagreement as to the amount of the loss it shall be ascertained by an appraisal in the nature of an arbitration, and that "the loss shall not become payable until sixty days after . . . an award by appraisers, when appraisal has been required"), if an appraisal has been properly demanded the assured cannot maintain an action on the policy until such appraisal has been made, waived, or in some manner legally dispensed with.

2. Such provision is reasonable and valid, and cannot be revoked at the mere option of either party.

3. An attempt by either party to misuse or pervert the provision for an appraisal so as to unreasonably delay an adjustment or secure an unjust abatement of an honest loss, is a breach of good faith and should be treated as a waiver and as warranting an action without an appraisal, if the party thus prejudiced has used all fair and reasonable means and diligence on his part to secure it.

4. The evidence in this case is *held* to support findings of the trial court to the effect that there was no real and substantial disagreement as to the amount of the loss, and that the demand for an appraisal was not made in good faith but to postpone the adjustment and coerce the assured into allowing an unjust rebate from his claim.

5. The appraisal or arbitration having failed because of the bad faith of the insurance company and the perverse refusal of the appraiser selected by it to concur in the appointment of any umpire residing in the vicinity of the property insured, or unless he resided in Chicago, 200 miles distant, the assured was not bound to enter into another appraisal before bringing suit on the policy.

6. In ascertaining the amount of the loss it is of no importance what the assured paid for the goods destroyed, or whether he paid for them in cash or in land. The only question is as to their fair cash value.

7. The assured is entitled to have the goods appraised at their value in the market where they were destroyed, and not at the rates in some other place on broken or bankrupt stocks.

APPEALS from judgments of the circuit court for Fond du Lac county: N. S. GILSON, Circuit Judge. *Affirmed.*

This action was brought to recover for loss sustained by the plaintiff under the standard insurance policy of Wisconsin, issued by the defendant *Rockford Insurance Company* on the plaintiff's stock of goods, which were wholly destroyed by fire at Oakfield, Wis., July 6, 1893, and claimed to be of the value of $13,465.12. The plaintiff held policies with six other companies upon the same goods for various amounts, namely, *Traders' Insurance Company, Hartford Fire Insurance Company, American Fire Insurance Company, Merchants' Insurance Company, Fire Association of Philadelphia, Liverpool, London & Globe Insurance Company,* such insurance amounting in all to $10,000. Actions were brought on each of the policies, October 8, 1893.

It appeared that the plaintiff gave due notice of his loss, and proofs thereof were made and submitted to the respective companies, July 24, 1893, to which no objections have been made. By the terms of each of the policies it was provided that, "in the event of disagreement as to the amount of the loss, the same shall . . . be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first

select a competent and disinterested umpire. The appraisers together shall then estimate and appraise the loss, stating separately sound value and damage; and, failing to agree, shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of the loss; . . . and the loss *shall not become payable until sixty days after* the notice, ascertainment, estimate, and satisfactory proofs of the loss herein required have been received by this company, *including an award by appraisers when appraisal has been required.*"

It was charged in the complaint that the companies conspired together to obtain an unjust and unwarranted rebate of the plaintiff's loss, and on the 8th of August, 1893, demanded the right of appraisement of the goods destroyed, under the arbitration clauses in the policies, the validity of which the plaintiff denied; that on that day a written submission was executed for that purpose, each party selecting an appraiser, the insurer selecting a resident of Chicago, unacquainted with the value of the goods and the market and trade in the vicinage of the fire, namely, at Oakfield, Fond du Lac county, Wisconsin; that an effort was made by the appraiser selected by the plaintiff to select an umpire, but the appraiser selected on the part of the companies refused to select an umpire and to enter upon an appraisement until he could ascertain the wishes of the companies, and on the next day left Fond du Lac and returned to Chicago, and had never since returned to the vicinage of the fire or to the state, and that all attempts thereafter to obtain the selection of an umpire had proved fruitless, by the refusal of the said appraiser for the companies to agree upon a proper and competent umpire, and would thereafter fail unless the plaintiff would consent to an unjust rebate and compromise; that said appraiser appointed by the companies was wholly subservient to their wishes and interests, and had been selected to carry out the conspiracy of the

companies by so refusing to appoint an umpire; that, having failed to get an umpire appointed, the plaintiff gave notice to the companies of revocation of the submission of August 8th, and that by reason of the premises the companies had waived the benefit of said arbitration clause and submission.

The defendant companies, respectively, each answered in the action against it, in substance setting up, by way of plea in abatement, the said arbitration clause and the submission under it to arbitrate of August 8th, to wit, the selection of George Ferris and G. W. Weber as appraisers, and that they had taken and subscribed the proper oath, and that they were not able to agree upon the amount of loss or damage, and that no umpire had been chosen; that the amount of loss due the plaintiff had never been ascertained, proposed, or awarded or returned under the respective policies; that said arbitration proceedings were valid, in full force, and undetermined when each of the actions was brought, and that, therefore, they were each premature; that said stipulation and submission had not been waived, and nothing was due the plaintiff under the terms of the respective policies.

The actions were all tried before the court at the same time, and submitted on the same evidence. The court found in each case, in substance, among other things: (1) That the demand for an appraisement was not made in good faith because of any real and substantial difference between the respective companies and the plaintiff, but to prolong and postpone the adjustment and payment of plaintiff's loss, and to coerce him to make rebate from his claim, which could not otherwise be obtained. (2) That the defendants, respectively, through their appraiser and with their approval, wantonly and unreasonably suspended the plaintiff's claim, and refused and neglected to appraise the loss or make any attempt to do so, but hung the same up indefinitely, to pro-

long and postpone the adjustment and payment of the plaintiff's loss and damages until he should be coerced into allowing an unjust rebate. (3) That no action was taken by the companies, respectively, within sixty days after receiving proofs of plaintiff's loss, nor prior to the commencement of the actions, tending towards an appraisement and adjustment of plaintiff's loss by arbitration or otherwise, or showing any purpose or intent to do so; that the plaintiff for that reason, October 3, 1893, revoked the agreement to arbitrate, signed August 8, 1893, and gave notice thereof to the respective companies before bringing the actions. (4) That the cash value of the plaintiff's property covered by the policies at the time of the fire was $13,465.12.

Judgment was given against each of the defendants for the amount of its policy, with interest from the date of the action, and each of them appealed from the judgment against it, and the appeals were heard together upon the same record.

For the appellants there were briefs by *Finch & Barber*, and oral argument by *Fred Beglinger* and *Charles Barber.*

For the respondent there was a brief by *Edward S. Bragg*, of counsel, and oral argument by *J. H. McCrory* and *Mr. Bragg*.

PINNEY, J. 1. These appeals involve questions of considerable importance in respect to the construction and effect to be given to the appraisal clause in the standard policies now in use in this state. The policies in question provide that loss or damage shall be ascertained or estimated by the assured and the company, or, in case of difference between them, then by appraisers as therein provided, and that "the loss shall not become payable until sixty days after . . . an award by appraisers, when appraisal has been required." This provision furnishes a speedy, convenient, and inexpensive mode of ascertaining the loss or damages of the assured, if he is entitled to recover, and does not appear to

be obnoxious to the objection that it is void as ousting the courts of their rightful jurisdiction. Under it the right of recovery is left open, and the appraisal serves only to liquidate and determine the amount of the loss or damage. The validity of such stipulations appears to be beyond doubt. We think that the question is perfectly well settled, and that it has been so considered ever since the case of *Scott v. Avery,* 5 H. L. Cas. 811; and that when parties to a contract agree that money shall be paid when something else happens, and that something else is that a third person named in it, or persons to be named as therein provided, shall determine the amount, then the cause of action does not arise until the amount has been so ascertained or determined, unless something has occurred which may operate as a waiver of such precedent condition, or to dispense with its performance, or that with fair and reasonable effort performance of it cannot be obtained. The rule is stated by JESSEL, M. R., in *Dawson v. Fitzgerald,* 1 Exch. Div. 257, 260, in brief, to be this: "There are two cases where such a plea as the present is successful: first, where the action can only be brought for the sum named by the arbitrator; secondly, where it is agreed that no action shall be brought until there has been an arbitration, or that the arbitration shall be a condition precedent to the right of action. In all other cases where there is, first, a covenant to pay, and, secondly, a covenant to refer, the covenants are distinct and collateral, and the plaintiff may sue on the first, leaving the defendant to bring an action for not referring," etc.

Here the covenant to pay is, by necessary implication, conditioned upon the appraisal, if properly claimed, and the plaintiff is in no position to claim anything until an appraisal has been made, waived, or in some manner legally dispensed with. *Elliott v. Royal Exch. Ass. Co.* L. R. 2 Exch. 240. The questions to be considered are " whether an arbitration or award is necessary before a complete cause of action arises,.

or is made a condition precedent to an action, or whether the agreement to refer disputes is a collateral and independent one." *Collins v. Locke,* 4 App. Cas. 689; *Edwards v. Aberayron S. Ins. Soc.* 1 Q. B. Div. 592, 598. We think that the stipulation in question is a valid and reasonable one, and not open to the objection urged against it that it ousts the jurisdiction of the courts, as it leaves the general question of liability, if any exists, to be judicially determined. The case of *Hamilton v. L., L. & G. Ins. Co.* 136 U. S. 242, 254, seems decisive. *Delaware & H. Canal Co. v. Pennsylvania Coal Co.* 50 N. Y. 250; *Reed v. Washington F. & M. Ins. Co.* 138 Mass. 572, 576; *Hudson v. McCartney,* 33 Wis. 331. In such cases a party may not of his own mere option or volition revoke the arbitration or submission clause, any more than any other provision of the contract. A contrary view, however, obtains in Pennsylvania, in cases where the person or persons who are to make the appraisal or award are not named in the contract but are to be chosen thereafter by the parties. *Mentz v. Armenia F. Ins. Co.* 79 Pa. St. 478; *Commercial U. Ass. Co. v. Hocking,* 115 Pa. St. 414. But we are unable to see any substantial ground for the distinction.

Upon the other hand, the case of *Hamilton v. Home Ins. Co.* 137 U. S. 370, is one where the provision that an appraisal should be made was not either expressly or by necessary implication a condition precedent to the obligation to pay, but where the stipulation for an appraisal was held to be independent and collateral, and the assured entitled to sue without an appraisal; and the principal cases on this point are here collected. The cases relied on by the respondent's counsel fall within the category of *Hamilton v. Home Ins. Co.* and *Reed v. Washington F. & M. Ins. Co., supra. Rowe v. Williams,* 97 Mass. 165; *Hood v. Hartshorn,* 100 Mass. 121; *Nute v. Hamilton Mut. Ins. Co.* 6 Gray, 181; *Stephenson v. Piscataqua F. & M. Ins. Co.* 54 Me. 70.

The doctrine laid down in this state in *Hudson v. Mc-Cartney* has not been departed from or materially qualified. In *Phœnix Ins. Co. v. Badger*, 53 Wis. 283, and *Vanginder-taelen v. Phenix Ins. Co.* 82 Wis. 112, where there were provisions in substance as in these cases, no arbitration was demanded. In *Canfield v. Watertown F. Ins. Co.* 55 Wis. 419, the policy did not provide, either expressly or by necessary implication, that an award should be a condition to the right to sue; and the same is true of the contract in *Oakwood Retreat Asso. v. Rathborne*, 65 Wis. 177.

We hold, therefore, that where an appraisal has been properly demanded an appraisal or award on the question of the amount of loss or damage is made by these policies, by necessary implication, a condition precedent to the right of the assured to sue, and he cannot maintain his action unless the condition is waived or in some way dispensed with; and that he has in such case no right, at his mere option or volition, to revoke the arbitration clause in the policy or a submission under it.

2. About two weeks after the fire, July 20th, a Mr. Berne, adjuster for the *Traders' Insurance Company*, and then representing some of the other companies, called on the plaintiff, and examined his books and papers, and made inquiries in regard to the loss, and he soon afterwards came to represent the other companies. The plaintiff had purchased the stock, that of a variety store in a country village, about six months before, of one Russell, and had paid a considerable, indeed the greater, part of the price in Iowa lands. He had been allowed quite a considerable discount on the goods because some were shelfworn, and a further discount of about $1,100 was insisted on and obtained by the plaintiff. Berne, the adjuster, insisted on a considerable discount on the goods because they had been paid for by the plaintiff in land; and under this claim the difference on insured value, at the outside, amounted to about $700, and upon a

fair computation did not seem to be more than $400. Berne testified that " the difference was as to the value of the stock of goods paid for by real-estate trade. That was the point; " that they had not been bought for cash. The plaintiff claimed the full face of the policies, and he testified that Berne told him on this occasion that " the only way he could get anything out of me was to attack the original invoices; that I traded land for it, and did not pay cash, and he was not going to allow cash price for it." Berne denies the particular form of expression, " make anything out of you," but admits that he might have said the only way he could get along with him was to attack the inventory of Russell. Berne then notified the plaintiff he should demand an appraisal.

August 8th the parties met at Fond du Lac, by appointment, Berne bringing with him from Chicago one Weber, of that city, whom he named as appraiser on behalf of the companies, the plaintiff naming one Ferris, who acted as appraiser when he purchased of Russell, and the submission was signed. The evidence is clear that no attempt was ever made by the appraisers to agree on an award; that they at once failed to agree in the choice of an umpire. Ferris proposed the names of six business men, conceded to be competent and of good character, residing in Fond du Lac county. Weber did not name any one, except three parties living in Chicago. He said he wanted to go to Chicago, though he stated that, if Ferris desired, he would stay and get through with the matter; and that about that time a boy came to the door and called out:"Mr. Berne says if you are going to take that train you will have to start now;" and he took the list of names, and never returned again to meet Ferris in relation to the business. Weber testified that he thought the parties named by Ferris " too much befriended " to the plaintiff, but " did not find in looking them up that which indicated friendship; " that he made up his

mind "that *they were not the men we wanted;*" that he did not find out anything against their integrity; that he "objected to these six men all on general principles;" "I rejected all of them;" that he "did not offer to name any one in Fond du Lac, nor any country merchant; . . . I stayed by Chicago."

After Berne and Weber left Fond du Lac, correspondence occurred between Ferris and Weber, and between the plaintiff and Berne. Ferris declined to accept either of the three Chicago parties named by Weber, August 15th, and on the 25th Weber asked him to submit other names, which he did, and on the 28th Weber refused to accept any of them, and suggested that Ferris visit him in Chicago, and "we can possibly agree on the proper party." This Ferris declined to do, and on the 5th of September Weber refused to consent to any one Ferris had named, saying, "I do not think there is any occasion to name specific reasons for objection," and asking Ferris to submit other names. On the 16th he sent the names of three other parties in Fond du Lac county, and on the 30th Weber promised he should hear from him in a few days. Finally, on the 5th of October, he proposed one Kroeger, of Milwaukee, but in the meantime notice of revocation had been served. On the 2d of September the plaintiff wrote Berne that if he wished to proceed with the arbitration he must come to Oakfield (the place of loss) or Fond du Lac. On the 8th of September, Berne wrote the plaintiff that the appraisers had, in his opinion, "spent quite sufficient time over it to enable them to select some good man, but neither you or I can interfere, as the matter is left to them," but proposed to select other appraisers; to which the plaintiff responded that Weber's "reasons for not agreeing on an umpire are simply frivolous;" that in his opinion he would "reject any proposed by Mr. Ferris;" that he was "willing to do anything reasonable to get this matter settled, but to continue it in the way it has been I object." This

was one month before the actions were brought, and nothing further appears to have been done by Berne, except to inform the plaintiff that he declined "to enter into any discussion of the reasons either of your or our appraiser in declining the parties proposed by each," and that he had "neither the right nor the inclination to interfere in any way with them." On the 16th the plaintiff wrote Berne asking that he and Weber come to Fond du Lac and agree upon some qualified business man acquainted with the business and that part of the state; but on the 2d he wrote the plaintiff that a representative of Walker & Co. had called to learn about his claim, and that he had explained the situation, and "again urged Mr. Weber, *in so far as I could*, to try and meet Mr. Ferris with some one on whom they could agree;" and finally suggesting that he intrust his matters to Walker & Co., "and we might agree in that way, and settle everything."

Both Berne and Weber were examined at considerable length at the trial, as well as the plaintiff. The uncontradicted evidence was that the goods were worth $13,465.12, and there was no claim of any defense to the actions, except the one insisted on by the plea in abatement. An examination of the evidence leaves no doubt as to the correctness of the finding of the circuit court. It shows that unfair and perverse practices were resorted to, to compel the plaintiff to abate what appears to have been a just and valid claim for an honest loss. The circuit court having heard the evidence and observed the manner of testifying of the plaintiff, Berne, the adjuster, and Weber, could not easily be misled as to the purposes and the complicity found between the two latter. We cannot say that the finding was not in accordance with the evidence. It seems evident that there was no fair *bona fide* difference between the parties as to the amount of the loss. It was of no importance what the plaintiff paid for the goods, or whether in money or prop-

erty, or whether they had been given to him. In either event he would be entitled to the benefit of his bargain or gift. The only question was as to the fair cash value of the goods destroyed. By signing the submission, probably the plaintiff waived the right to object that there was no *bona fide* disagreement, but the facts remain in their bearing upon what ensued in the way of attempting to get an adjustment of his loss. We think he used all fair and reasonable efforts to that end, and that he did not succeed was solely the fault of Weber and the adjuster, Berne. The whole transaction is quite transparent. Weber was "standing by Chicago," and by Berne as well, and objecting " on general principles" to any one proposed as an umpire by Ferris, arbitrarily and without any attempt to assign reasonable ground or explanation.

There does not seem to be any fair criticism made or attempted against the conduct of Ferris. The plaintiff was entitled to have his goods appraised at their value in the market where they were destroyed, and not at Chicago rates on broken or bankrupt stocks. The policy of our law is in favor of the adjustment of such losses where they occur, and it is unreasonable and unfair to expect that the assured will follow up his claims into another state, or accept the arbitrament of appraisers selected from Chicago, nearly 200 miles distant; or, if from Chicago, why not from Cincinnati, New York, or Boston? We do not say that such parties are incompetent, but in view of the effect of the submission we do hold that the parties are bound to exercise towards each other the utmost good faith and proceed with all reasonable diligence to procure an adjustment according to the letter and spirit of the contract.

It is not permissible for the insurers, under the provisions of the standard policy, to arbitrarily or capriciously demand an appraisal, simply to suspend a claim for a loss, and select

an appraiser who will perversely refuse to concur in the appointment of an umpire unless he resides in Chicago or is the kind of man the insurers want. Such a course, if tolerated, places the assured very largely at the mercy of the insurers. Any attempt on the part of either party to misuse or pervert the provisions of the standard policy for an appraisal, so as to unreasonably delay an adjustment or to secure an unjust abatement of an honest loss, is a breach of good faith and should be treated as a waiver of the condition, and dispensing with the necessity of an appraisal and warranting a resort to an action without one, if the party thus prejudiced has used all fair and reasonable means and diligence on his part to secure it. To hold otherwise would be to permit the party in fault to profit by his own wrong. The result reached in this case is in accordance with a recent case quite in point,— *McCullough v. Phœnix Ins. Co.* 113 Mo. 606. In *Uhrig v. Williamsburgh C. F. Ins. Co.* 101 N. Y. 362, it was laid down that, "under the arbitration clause, it was the duty of each party to act in good faith to accomplish the appraisement in the way provided in the policy, and if either party acted in bad faith so as to defeat the real object of the clause it absolved the other party from compliance therewith; and if either refused to go on with the arbitration, or to procure the appointment of an umpire so that there could be an agreement upon an appraisal, the other party was absolved. A claimant cannot be tied up forever, without his fault and against his will, by an ineffectual arbitration." *Bishop v. Agricultural Ins. Co.* 130 N. Y. 488, is, in substance, to the same effect. And the arbitration having failed in consequence of the perverse conduct and want of good faith of the insurance companies, represented by their adjuster and the appraiser, Weber, the plaintiff was not bound to enter into a new one or name another appraiser, even if the companies were willing to

name a new one on their part. *Uhrig v. Williamsburgh C. F. Ins. Co.* 101 N. Y. 362. And this is in harmony with what was said in *Davenport v. L. I. Ins. Co.* 10 Daly, 538, 539.

The judgments appealed from were rightly given for the plaintiff.

*By the Court.*— The judgments appealed from are affirmed.