BRYAN O'ROURKE v. GERMAN INSURANCE COMPANY OF FREE-
PORT.[1]

November 10, 1905.

Nos. 14,475—(49).

**Insurance—Act of Referee.**
If a referee nominated by the insurer to adjust a fire loss arbitrarily and unfairly refuses to co-operate with his associate in selecting a third referee, and refuses to further act as a referee, such conduct will constitute a waiver by the insurer of its rights to have the loss adjusted by referees, if it authorizes or approves, directly or indirectly, the action of its referee.

**Act of Insurer.**
If the insurer does not so authorize or approve the action of its referee, but, upon being advised thereof, it refuses to agree to the selection of other referees, it thereby waives its right to an appraisal of the loss.

**Evidence.**
Evidence considered, and *held* to sustain the verdict to the effect that the defendant waived its right to appraisal of the loss here in question.

Action in the district court for St. Louis county to recover $650, and interest, upon a fire insurance policy. The case was tried before Ensign,

[1] Reported in 104 N. W. 900.

J., and a jury, which rendered a verdict in favor of plaintiff for the sum demanded. From an order granting a motion for judgment in favor of defendant notwithstanding the verdict, and denying a motion for a new trial, plaintiff appealed. Reversed and remanded, with leave to defendant to renew motion for a new trial.

*Baldwin, Baldwin & Dancer,* for appellant.

*Morton Barrows,* for respondent.

START, C. J.

The complaint herein alleged in effect, with other matters, that on May 21, 1902, the defendant duly executed to the plaintiff its policy of insurance, and thereby insured him in the sum of $800 against loss or damage by fire of his building and its fixtures at Hibbing, this state, for the term of one year; that on August 26, 1902, the building was damaged by fire to the extent of $800 and the defendant duly notified thereof; that proofs of the loss sustained were duly made and delivered to the defendant; and, further, that the defendant refused to pay such loss, but waived its right to an appraisal thereof by referees. The answer denied that the defendant waived such appraisal, and alleged that the plaintiff by his own acts and misconduct prevented any arbitration of the loss by referees. This was denied by the reply. A trial of the issues by a jury resulted in a verdict for the plaintiff for the sum of $720.42. The defendant then made a motion for judgment in its favor notwithstanding the verdict or for a new trial, and the court made its order denying a new trial, but ordered judgment absolute for the defendant. The plaintiff appealed from the whole order.

Two issues only were submitted to the jury. The first one related to the alleged waiver by the defendant of its right to an appraisal of the loss by referees, and the second to the amount of the loss in case the plaintiff was entitled to recover upon the policy. As to the second issue, no claim is or can be made that the evidence was not sufficient to sustain the award of damages made by the jury. As to the first issue, the trial court instructed the jury to the effect that, unless the defendant waived its right to an arbitration of the loss, their verdict must be for the defendant. It is clear from the record that the trial court based its order for judgment upon the proposition that as a matter of law there was no evidence to sustain a finding in favor of the plaintiff on the first

issue. No claim was made in this court in the brief of counsel for defendant that the trial court erred in any of its instructions to the jury. The record, then, presents for our decision the sole question whether the evidence was sufficient to make the question of waiver one of fact, or, in other words, to sustain the verdict of the jury on that issue.

It is reasonably clear from the evidence that the jury might have found a verdict for the defendant; but, unless there was no evidence fairly tending to support the verdict, the order appealed from must be reversed. It is practically admitted that a loss within the terms of the policy occurred on August 26, 1902; that the defendant was duly notified of the loss; that the parties did not agree as to the amount thereof; that two referees were selected as provided by the policy, namely, Mr. H. M. Leighton, of Minneapolis, one of the three persons named by the defendant, and Mr. J. M. McIntyre, of Hibbing, one of the three persons named by the plaintiff; and that the referees accepted, and met at Hibbing on November 18, 1902.

There was evidence relevant to the issue of waiver as follows: Mr. McIntyre testified that the referees had a meeting for the purpose of selecting a third referee; that Mr. Leighton proposed Mr. Watterworth or Mr. McLeod; that the plaintiff was informed that Mr. Watterworth was a referee selected by the insurer for the adjustment of another fire loss which the plaintiff had sustained, and that Mr. McLeod was his partner; that for this reason he declined to agree to the selection of either of them, and so informed Mr. Leighton, who declined to suggest any other names; and, further, that he then suggested to Mr. Leighton the names of many other persons who were contractors and builders, and that Mr. Leighton declined to consider the selection of any of them. The witness further testified in part as follows:

> What was said at the hotel, after you went to the hotel? A. Well, there wasn't very much said. I asked him if we couldn't decide on another man besides these two. I told him in the Hotel Hibbing my objection to McLeod. Q. What did he say? A. He told me that he was busy, that he had a lot of work to do in the evening, and must hustle back on the morning train; and he said he ought not to come up on that case at all because he was so busy, and he was going back in the morning. I asked

him, then, if we couldn't decide on a third man now, and have it over, so that he could go back, and he said he would take McLeod or Watterworth; that he wouldn't take anybody else I had suggested, because he didn't know them.  He gave that reason—he didn't know them, and he would not take any man he did not know. * * * Q. All right.  Tell what was said. A. I asked him if we couldn't get another man.  He said: "No, I have got to go away on the morning train, and I won't have anything more to do with it."  I am quite sure that was what he said.  Q. Did you see him after that?  A. No; I didn't see him after that.

On his cross-examination the witness testified:

Did he [Leighton] say the purpose of his visit was to inquire into the loss on the O'Rourke building by fire?  A. On the frame building.  Q. Inquire into the loss on the O'Rourke building?  A. Yes; to estimate the loss.  Q. To estimate the loss?  A. Yes; he was one of the appraisers for the insurance company.

The plaintiff testified that he heard a part of the conversation between the referees, and, further:

I walked up to the two of them on the walk, and I says: "Why don't you folks get together and straighten up that."  He says: "Mr. McIntyre won't take Mr. Watterworth."  I says: "Can't you pick someone else?" or words to that effect. * * * "Can't you get someone else in the state outside of Mr. Watterworth?" And he says: "No; got to have Mr. Watterworth," or some words to that effect.  And he walked right away.  I followed him a little on the walk, and said: "Come on," I said, "and fix it up," or something like that.  He said: "I will have nothing more to do with it.  I am going to Minneapolis."  Wouldn't hardly look at me or talk to me.

Mr. Leighton was called as a witness by the defendant, and testified to the effect that he did not refuse to act as a referee; that, when Mr. McIntyre refused to accept Mr. Watterworth, he suggested the names

of several persons, but Mr. McIntyre stated that he did not know them, and that it would take a day or two to look them up.

> I said to him: "It would be no use for me to lay around the hotel here, then, while you are doing that." "No; I don't know as it would be." And I told him if he was going to take that length of time I would go back to Minneapolis. And he promised to let me hear from him.

Mr. Leighton further testified as follows:

> Q. Did you visit Hibbing in November, 1902, with reference to the adjustment of this fire loss for Mr. O'Rourke? A. I did.

After the referees separated, and on November 28, 1902, the plaintiff commenced to repair his building. Nothing further seems to have been done by either party anent an adjustment of the loss until December 22, 1903, when a letter on behalf of the plaintiff, written by his attorneys, was sent to and received by the defendant. This letter, after referring to the loss, stated:

> An attempt was made between you and him some time ago to have an appraisal, according to the terms of the policy; but the appraiser selected by you, in seeking to select another appraiser with the appraiser appointed by Mr. O'Rourke, absolutely refused to agree to any one for the third appraiser, except one of two persons. The appraiser selected by Mr. O'Rourke considered the two names unfair, and was willing to agree upon any other responsible person that might be named. As a result of the action of your appraiser, no appraisal was had. We now desire to have the matter finally settled up, and are ready to select appraisers according to the terms of the policy. If you will not do this, then we shall commence suit upon the policy. Kindly let us know your pleasure at the earliest moment.

The defendant replied by a letter from its attorneys, which challenged the correctness of the facts stated in plaintiff's letter and then stated:

> As Mr. O'Rourke has now rebuilt, we are unable to see how it would be possible for a third party to arrive at an intelligent estimate of this loss and thus qualify himself to act as umpire.

The plaintiff's attorneys then made reply reiterating their version of the facts, and then said:

> As stated in our letter, we repeat in Mr. O'Rourke's behalf that he is ready and willing now to have an appraisal made of the property according to the terms of the policy. If the company does not see fit to submit to an appraisal, we shall take it that they waive the appraisal, and we will commence suit to recover the amount of the loss.

In reply the defendant recapitulated the facts as claimed by it and said:

> It would appear equally clear that O'Rourke, by proceeding to rebuild the damaged premises, has by his voluntary act destroyed the evidence of damage and made a legal appraisal an impossibility. We desire, however, to be more than fair, and for the sole purpose of an amicable adjustment, and with the express proviso that it shall not be construed as either an admission of liability or a waiver of any of its rights in the premises, we now offer to adjust and settle the matter by the payment of the sum of three hundred dollars.

In reply the plaintiff's attorneys wrote that:

> Mr. O'Rourke desires us to say that the proposition will not be accepted and, since we assume that this is your best offer, we will give a notice under the policy for an appraisal in accordance with the terms of the policy. If the company does not see fit, we shall then commence suit upon the policy, which will probably be the best way to settle the whole question.

To this the defendant replied:

> We have placed this matter fully before you, and stated our position in that connection, and we do not know that we have anything further to add or to amend at the present time. You will, of course, take such action as to you may seem justifiable in the premises.

We have not attempted to refer to all of the evidence received upon the issue of waiver in detail, but to give a substantial summary thereof.

We have, however, considered the entire evidence pertinent to the issue, and have reached the conclusion that the evidence was sufficient to take the case to the jury on the question of waiver, and that the whole evidence, taking, as we must, the most favorable view of it for the plaintiff, fairly sustains the verdict. The evidence was sufficient, if satisfactory to the jury, to sustain a finding that the referee nominated by the company—that is, its referee, for all practical purposes—arbitrarily and unfairly refused to consider the selection of any other person as umpire, or third referee, except one of the two persons named by him, and that his action was in effect a refusal to proceed with an appraisal of the loss. If the referees selected by the parties simply failed to agree upon a third referee after an honest effort upon the part of each to do so, then either party desiring an appraisal of the loss might have applied to the district court of the .proper county to appoint a third referee. Laws 1895, p. 422, c. 175, § 55. This statute, however, has no application to a case where a referee nominated by one of the parties refuses to act as such; for the court is only authorized to appoint a third referee. If, then, the referee nominated by the defendant did by his words or conduct refuse to act further as a referee, and his action was authorized or approved, directly or indirectly, by the defendant, it would constitute a waiver of its right to have the loss adjusted by referees. What the effect would be upon the rights of the parties if the insurer should affirmatively show that the refusal of its referee to act was without its knowledge or consent we need not determine.

But if the defendant did not so authorize or approve such action on the part of its referee, yet if, upon being advised thereof, it refused to agree to the selection of other referees, it would thereby waive its right to an appraisal of the loss. McCullough v. Phoenix, 113 Mo. 606, 21 S. W. 207; Brock v. Dwelling House, 102 Mich. 583, 61 N. W. 67; Niagara v. Bishop, 154 Ill. 9, 39 N. E. 1102; Chapman v. Rockford, 89 Wis. 572, 62 N. W. 422. The correspondence between the parties after the alleged abandonment by the referee Leighton of the matter of the adjustment of the loss is sufficient to justify a finding that the defendant refused, after being advised thereof, to co-operate with the plaintiff to secure the appointment of other referees, and further, that if the plaintiff, as he suggested that he would do, had given notice under the policy for an appraisal, it would have been unavailing. The plain-

tiff was not bound to do a vain thing. Upon the consideration of the whole evidence, we hold that it is sufficient to sustain the finding of the jury upon the issue of waiver, and that the trial court erred in ordering judgment for the defendant.

Order reversed. Cause remanded, with direction to the district court to cause judgment for the plaintiff to be entered on the verdict.

On November 22, 1905, the following order was filed:

PER CURIAM.

The defendant having made an application for a reargument of this case, it is ordered that the application be, and it is hereby, denied, but ordered, further, that the order of this court remanding the cause be, and it is hereby, modified so as to read as follows:

Ordered that the order appealed from be reversed, and the cause remanded to the district court, with leave to the defendant to renew his motion for a new trial in that court at any time within twenty days after the remittitur is filed therein; but if such motion be not made within the time limited, or it be denied, then the district court is directed to cause judgment to be entered for the plaintiff on the verdict.