TOWNSHIP OF MUNRO *v.* PIONEER RESERVE MUTUAL
FIRE INSURANCE CO.

1. INSURANCE—INTENTION OF PROVIDING FOR ARBITRATION OF CLAIM.
   In providing, in an insurance policy, for arbitration of a
   claim arising thereunder, the intention is to afford a
   speedy and inexpensive way of settling the questions in
   dispute affecting the liability of the insurer.

2. SAME—ARBITRATION—MISCONDUCT FOR ARBITRATOR TO ACT AS
   AGENT INSTEAD OF JUDGE.
   It is misconduct for an arbitrator to act under the
   direction of one of the parties, as an agent, instead of
   as an impartial judge.

3. SAME — ARBITRATION — UNJUST AND UNREASONABLE CONDUCT
   AMOUNTS TO REFUSAL TO ARBITRATE.
   Where an insurance company instructed its arbitrator to
   insist that the proposed arbitration meeting be held in
   a city more than 100 miles distant from the place where
   the fire occurred, and to refuse to accept as a third ar-
   bitrator any one living in the county where the fire oc-
   curred or in any county adjacent or near thereto, such
   conduct was unreasonable and unjust, and justified a find-
   ing by the jury, in an action on the claim involved therein,
   that insurer had refused to proceed with the arbitration
   provided for in the policy.

Error to Cheboygan; Shepherd (Frank), J.   Sub-
mitted January 5, 1927.   (Docket No. 17.)   Decided
April 1, 1927.

Assumpsit by the township of Munro against the
Pioneer Reserve Mutual Fire Insurance Company on
a policy of insurance.   Judgment for plaintiff.   De-
fendant brings error.   Affirmed.

*O'Brien & Travis,* for appellant.

*Sprague & Shepherd,* for appellee.

[1]Fire Insurance, 26 C. J. § 538 (Anno); [2]Id., 26 C. J. § 566;
[3]Id., 26 C. J. §§ 570, 754; 47 L. R. A. (N. S.) 446; 2 R. C. L.
394; 1 R. C. L. Supp. 520.

Sharpe, C. J.   Plaintiff's township hall was destroyed by fire on September 27, 1924.   It was at that time insured in the defendant company in the sum of $800.   Plaintiff's supervisor, Mr. Spray, at once notified the company of the loss, and an adjuster was sent by it about two weeks later.   On February 19, 1925, defendant's secretary, Mr. Slocum, wrote Mr. Spray, inclosing a check for $400, advising him that the claim of loss was rejected for the reason that the hall was rented on the night of the fire for a dance, "contrary to the laws, rules and regulations of this company," but that the board of directors were willing to compromise by payment of one-half of the loss.   A meeting of the township board was held, at which the offer was rejected.   Mr. Spray advised the company of this action on March 7th, and asked that he "be furnished with the proper blanks to arbitrate the loss."   Mr. Slocum replied on March 18th, inclosing a blank arbitration agreement, which was filled out by Mr. Spray, and in which Herbert F. Baker, of Cheboygan county, in which the township of Munro is located, was named as its arbitrator.   He also inclosed a certified check for $150, a guaranty that the township would bear the expense of the arbitration if it should become liable therefor.

It may be here noted that under the terms of the policy the arbitrators chosen "must be members of the company carrying real estate insurance."   On March 28th, Mr. Slocum wrote Mr. Baker, who was an old friend, that he had been advised of his appointment as an arbitrator by the township, and asked for a conference with him about the matter when he next visited Detroit, where defendant's office was located. They met on the morning of April 21st.   In the discussion which followed, Slocum informed Baker that Cheboygan county "was an unprofitable territory in which, or for his company to do business in," and said

that he was "minded to cancel all the insurance in that section," whereupon Baker suggested that he had better commence on his policy, and Slocum replied, "Your policy is canceled now." On April 24th, Slocum wrote the supervisor that the company had selected as its arbitrator Alfred Schwanebeck, of Fenton, in Genesee county. He also advised him that Mr. Baker was not eligible to act for the township as his insurance had been canceled, and that it must select another. In this letter he further said:

"It might be of interest to you to know that we are taking up this matter with all our members in Cheboygan county, laying the details of the proposition before them and the decision of the majority will guide our attitude in this matter in the future."

Plaintiff at once selected Lloyd Wheelock, of Levering, Cheboygan county, as its arbitrator. Defendant replied on June 4th, advising that Wheelock was ineligible, and suggesting that the arbitration be held at West Branch, a point nearly equally distant from Cheboygan and Fenton. Some correspondence followed regarding the eligibility of Wheelock. On June 9th Mr. Spray wrote defendant asking for a "list of names of policy holders in this company, that could act as arbitrators in this case." Slocum sent him a list of the members in Cheboygan county on June 29th. In the meantime a circular letter, signed by the president and secretary of the defendant company, had been sent by mail to all the "Cheboygan county members." In it they were informed of plaintiff's loss and the "supposed" cause thereof; that the matter had been considered by defendant's board of directors, and "it was the unanimous opinion that the town board had invalidated the policy;" that they had offered in compromise $400, which had been rejected; that further efforts at settlement "were rebuffed;" that the business of the company in Cheboygan county had not been profitable,

and asking the members to express their opinion on a blank inclosed as to "what shall be done with this loss * * * and it will have a strong influence as to what we shall do. Your name and your opinion will be held strictly confidential." Slocum, by letter, informed plaintiff that this circular had been mailed, and advised him that "of all the replies that we have received only five voted in favor of making the payment, therefore, these members would be prejudiced."

On July 16th, plaintiff wrote defendant, advising it of the selection of Edwin A. Riggs, of Cheboygan county, as its arbitrator. Defendant, in the meantime, had changed its arbitrator to John Banwell, of Emmet county. The two arbitrators met on August 17th at Indian River, in Cheboygan county. They did not agree on a third arbitrator. They afterwards met, and Banwell presented a list of the names of members in Lapeer, Montcalm and Isabella counties, which had been furnished him by defendant. There was a further conference and correspondence. On September 19th, Banwell informed Riggs by letter that he would not agree "to any one in these northern counties" as a third arbitrator. In this he admitted that he was following the instructions of Mr. Slocum, who had written him, "We will not be satisfied with any arbitrator selected from your section of the State," and asked that he insist that the arbitration be held at West Branch, a distance of 113 miles from Cheboygan. Banwell admitted that the only reason he rejected the names of some of the members in Cheboygan county was because he was told to do so by Mr. Slocum.

In the meantime, there had been correspondence between Slocum and Riggs, and the latter had offered to have the third arbitrator selected from the membership in Alpena, Montmorency, Otsego, Antrim, Leelanau, Charlevoix, Emmet, Cheboygan or Presque Isle

counties.    This offer Slocum declined, saying that he "will not agree to anyone in these northern counties." Effort to secure arbitration ended when Riggs received a letter from Banwell on December 14th, saying he "would not agree to a northern man," for the reasons stated by Slocum.    This was communicated to the supervisor, and on January 8, 1926, this action was brought to recover under the policy.    Defendant gave notice that it would insist in its defense on the following provision in the policy:

"No suit or action on the policy for the recovery of any claim shall be sustainable in any court of law or equity, unless the company shall refuse to arbitrate the claims of the insured."

Defendant's motion for a directed verdict was denied.    The trial court instructed the jury:

"You are further instructed that in order to return a verdict for the plaintiff in this suit, you must find by a preponderance of the evidence that the defendant, by its conduct and that of its officers, has so conducted itself as to result in a practical refusal to arbitrate, even though it professed to desire an arbitration.    You are to find that to be true by a preponderance of the evidence before you would be justified in returning a verdict against the defendant."

The jury found for the plaintiff in the sum of $860. The defendant reviews the judgment entered thereon by writ of error.    While there are many assignments, they are seemingly all included in the claim of defendant that it was entitled to a directed verdict, for the reason that it had not refused to arbitrate the claim of the plaintiff.

The arbitration provided for in defendant's policies is intended to afford a speedy and inexpensive way of settling the questions in dispute, affecting the liability of the insurer.    *Jacobs* v. *Schmidt*, 231 Mich. 200, 203.    Neither of these purposes have been accomplished in the proceedings had since plaintiff's loss.

More than 15 months had elapsed after the fire before
this action was brought, and defendant demanded
and plaintiff furnished a certified check for $150 to
guarantee the payment of any costs awarded against
it.   No question was raised that plaintiff's loss by
fire was not greater than the amount for which its
building was insured.   The only question to be sub-
mitted to arbitration was whether the cause of the
fire relieved the defendant from liability.

Oral testimony would have been admissible to show
what caused the fire and the use which plaintiff had
permitted to be made of its hall on the night it oc-
curred.   Clearly, only those who were present at the
gathering that night, or who lived in the immediate
vicinity, would have been competent witnesses.   And
yet, the defendant instructed its arbitrator to insist
that the arbitration be held at West Branch, a city
more than 100 miles distant from the place where the
fire occurred.

Defendant also gave positive instructions to its ar-
bitrator that he must not consent to the selection of a
third arbitrator who lived in Cheboygan county, or in
any county adjacent or near thereto.   Banwell ad-
mitted that in the list of names of members from such
counties considered by him and Riggs there were men
whom he knew to be capable and honest.   His refusal
to agree on one of them was due to the instructions
he had received from defendant.

It was highly improper for the defendant to instruct
its arbitrator in the respect stated.   When appointed,
he should have acted on his own judgment in all
matters presented for his decision.   We are of the
opinion that the position taken by him relative to the
selection of a third arbitrator and the place of meeting
was unreasonable and unjust, and justified a finding
by the jury that defendant had refused to proceed with
the arbitration.   In 2 R. C. L. p. 394, it is said:

"It has been held misconduct for an arbitrator to act under the direction of one of the parties, as an agent instead of as an impartial judge."

The facts here presented are quite similar to those considered in *Brock* v. *Insurance Co.*, 102 Mich. 583, 593 (26 L. R. A. 623, 47 Am. St. Rep. 562), in which this court said:

"It is well settled that where the conduct of the company's appraiser in refusing to agree on an umpire is inexcusable, and virtually amounts to a refusal to proceed with the appraisement, the fact that the appraisement was not concluded before suit brought will not bar an action on the policy."

The other errors assigned have been considered. They do not seem to merit discussion.

The judgment is affirmed, with costs to appellee.

BIRD, SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.