82 U.S. 664
 21 L.Ed. 246
 15 Wall. 664
 INSURANCE COMPANY
v.
LYMAN.
 December Term, 1872
 
 ERROR to the Circuit Court for the District of Louisiana.
 Lyman & Co. brought their action in the court below against the Merchants' Mutual Insurance Company of New Orleans, for the sum of $12,000, the value of the brig 'Sailor Boy,' lost at sea on the 8th of January, 1870, and which was insured, as they allege, by the said company. Their petition set forth that on the 30th of October, 1869, the company had issued a policy to them on the brig for the sum named, which insured her until January 1st, 1870.
 That on the 15th December, 1869, they applied to the company to insure them in the same sum, upon the same vessel for three months, from the said 1st January, 1870.
 That after taking time to consider, the company, on December 24th, 1869, proposed to renew the insurance for the premium of $600, and that on December 31st the plaintiffs accepted this proposition for renewal, and that the company on that day agreed with them that it would issue the policy, and make it out and send it to them, and receive the premium.
 That on the 15th January, 1870, the plaintiffs sent for the policy and paid the premium, and the company issued to plaintiffs the policy annexed to the petition; that the said policy was not a compliance with and a formal statement of the agreement to renew the insurance, made December 31st, 1869.
 That on the 8th of January, 1870, the brig was lost, &c.
 Along with their petition, the plaintiffs filed two policies of insurance, on their face such as above stated; that is to say, one dated October 30th, 1869, for two months, expiring January 1st, 1870, and one dated January 15th, 1870, and which, by its terms, purported to make an insurance 'from the 1st January, 1870, to the 1st of April, 1870.'
 On the trial it appeared that the plaintiffs, when they renewed the policy of the 15th January, and paid the premium for insurance, knew that the vessel was lost, and that the defendants had no such knowledge or information.
 As on this state of facts it would be obvious that no action could be sustained on the policy—and indeed that, in point of fact, the taking of such a policy, and causing the defendant to sign it would have been a fraud—the plaintiffs framed their petition on the assumption, and directed their evidence to the showing that the execution of the policy was but carrying into effect an agreement made before the loss of the vessel.
 In order to sustain this their case they offered in evidence the deposition of their agent, which gave an account of conversations had by him in reference to a renewal of the insurance with some one in the defendants' office. The defendants objected to this testimony, on the ground that there was written application for and contract of insurance between the parties for the same amount of insurance and same amount of premium, on the same object insured, the vessel called 'Sailor Boy,' by the same plaintiffs as insured, and same defendants as insurers, for the same space of time, to wit, from the 1st day of January, 1870, to the 31st March, 1870; that the plaintiffs had no right to contradict the written application aforesaid by proof of a previous verbal contract; that the plaintiffs' right of action, if any, was on the written application and contract aforesaid, and that they could not ignore the said written contract to fall back on an alleged previous verbal contract of the same tenor and purport; that the evidence showing that when the said written contract was executed, the plaintiffs and their agents were aware of the fact of the previous loss and abandonment of the 'Sailor Boy,' the said written application and policy were not binding in law, but were nevertheless the contract of the parties subject to be gainsaid by proper allegations and proof of fraud; that the plaintiffs could not ignore the written contract.
 But the court ruled as follows:
 'The plaintiffs put their entire case upon a verbal contract to renew the insurance made, as they allege, on the 31st day of December, eight days before the loss. They admit that when they sent for the written policy, on the 15th of January, they knew of the loss, and that they could not recover on the written policy standing by itself, but they say that the real contract was made on the 31st of December, and that they had a right to go to the jury on that issue.'
 The court accordingly overruled the objction and admitted the testimony.
 The testimony admitted was that of a single witness. It went to show that on the 15th December, 1869, he was directed by the agent of the plaintiffs 'to go to the company's office and see if they would renew the policy, and to get the rate; that he saw the secretary, who said that the company would renew, but that he could not then give the rate, but would let the agent know; that the witness had himself done nothing further in the matter till December 31st, though he heard that the company had informed the agent of the rate, 5 p. c., and that it was satisfactory; that on the 31st he was again told by the agent to go and renew the policy; that about half-past three in the afternoon of that day he went to the company's office, and asked to have the policy renewed; that a clerk, or person standing at the desk, to whom he applied, told him that the secretary had gone home, and that there was no one in the office who could do it, but that he would speak to the secretary when he came in, in the morning, and have it attended to the first thing; that the witness did nothing further until the 15th January, when the agent of the plaintiffs sent him to the company for the policy.'
 The witness stated the transaction of that day as follows:
 'I went to the office of the defendants, and asked the man at the corner of the desk for the policy on the 'Sailor Boy.' He turned over his book, but could not find it; said he would go and see the secretary. He went into the back office and returned with the secretary. The secretary said that he did not know that a policy had been ordered. I told him that I had ordered it the 31st of December. He said there had been no application made out. I told him I did not know anything about that; that no one said anything about an application to me. He said there should be one, and told the clerk to make one out for me to sign. The clerk made it out, and I signed it, and paid the premium, $510. The secretary asked me if anything had been heard from the vessel; I said, 'Not that I knew of."
 Upon cross-examination the witness testified that he was requested by the president of the company, after payment of the insurance money had been demanded, to come to the office and identify the person to whom he had made application on 31st December, but that he was not able to recognize or identify any one as the person.
 A verdict was given, and judgment entered for the plaintiffs, for the sum insured, and interest.
 The case being now here on error,
 Mr. W. M. Evarts, for the insurance company, plaintiff in error, argued that there was error:
 1st. In admitting evidence of a parol contract of insurance of the same subject, and for the same risk between the same parties, as the written policy given in evidence by the plaintiffs. For that the plaintiff had a complete written contract made on the 15th of January, upon a written application made on that day; and by a policy on that day dated. And that the fact that it was void from a fraud of his part, did not make it less the written contract of the parties, or a contract of that date, nor affect its efficacy under the rule of evidence, to exclude parol evidence of a written contract.
 2d. In submitting to the jury the evidence offered as showing or tending to show a contract of insurance by the defendant, made on the 31st of December, when the said evidence showed no such contract, but on the contrary showed a failure to make any contract, or to treat concerning such a contract. For that the proof showed that all that happened on that day, was that the messenger of the plaintiffs went to the insurance office, after business hours, and failed to find any one with whom to treat concerning the insurance.
 
 Mr. T. J. Durant, contra:
 
 1st. The evidence was not offered to contradict the written contract, but to show the circumstances under which it was made, and to show to what state of facts it really referred, by explaining that the instrument, made on the 15th January, only put in writing what had been agreed to between the parties on the 31st December previous, to which date and fact the policy related back. In other words, it was offered to show that the policy was but the expression, in a written form, of the verbal contract previously made.
 2d. But we had a right to abandon our written contract altogether, and recover on our parol contract, not relying on the written policy except as evidence, if we chose so to use it, and as giving part of the history of the transaction.
 Thus viewing the case, the fact that the vessel was lost on the 8th of January, and that the loss was known to the assured is unimportant.
 Corporations may contract by parol, and a verbal contract to issue a policy may be as binding as any contract in writing.
 The evidence did tend, in some degree certainly, to show the exact thing which it was offered to show, and was proper to go to the jury for what it was worth.
 Mr. Justice MILLER delivered the opinion of the court.
 
 
 1
 Undoubtedly a valid verbal contract for insurance may be made, and when it is relied on, and is unembarrassed by any written contract for the same insurance, it can be proved and become the foundation of a recovery as in all other cases where contracts may be made either by parol or in writing. But it is also true that when there is a written contract of insurance it must have the same effect as the adopted mode of expressing what the contract is, that it has in other classes of contract, and must have the same effect in excluding parol testimony in its application to it, that other written instruments have.
 
 
 2
 Counsel for the defendants in error here, relies on two propositions, namely, that the policy, though executed January 5th, is really but the expression of a verbal contract, made the 31st day of December previous, and that the loss of the vessel between those two dates does not invalidate the contract, though known to the insured and kept secret from the insurers; and secondly, that they can abandon the written contract altogether and recover on the parol contract.
 
 
 3
 We do not think that either of these propositions is sound.
 
 
 4
 Whatever may have been the precise facts concerning the negotiations for a renewal of the insurance previous to the execution of the policy, they evidently had reference to a written contract, to be made by the company.
 
 
 5
 When the company came to make this instrument, they were entitled to the information which the plaintiffs had of the loss of the vessel. If then they had made the policy, it would have bound them, and no question would have been raised of the validity of the instrument or of fraud practiced by the insured.
 
 
 6
 On the other hand, if they had refused to make a policy, no injury would have been done to the plaintiffs, and they would then have stood on their parol contract if they had one, and did not need a policy procured by fraudulent concealment of a material fact at the time it was executed and the premium paid.
 
 
 7
 To permit the plaintiffs, therefore, to prove by parol that the contract of insurance was actually made before the loss occurred, though executed and delivered and paid for afterward, is to contradict and vary the terms of the policy in a matter material to the contract, which we understand to be opposed to the rule on that subject in the law of Louisiana as well as at the common law.
 
 
 8
 We think it equally clear, that the terms of the contract having been reduced to writing, signed by one party and accepted by the other at the time the premium of insurance was paid, neither party can abandon that instrument, as of no value in ascertaining what the contract was, and resort to the verbal negotiations which were preliminary to its execution, for that purpose. The doctrine is too well settled that all previous negotiations and verbal statements are merged and excluded when the parties assent to a written instrument as expressing the agreement. And it is hardly necessary to say, that the party who has destroyed the validity of that contract by his own fraud, cannot for that reason treat it as if it had never been made, and recover on the verbal statements made before its execution.
 
 
 9
 We may add that, as the only testimony offered to prove this parol contract, was the deposition of a single witness, made part of the bill of exceptions, we do not see in that deposition sufficient evidence of a completed contract, of an agreement assented to by both parties at any one time, to be submitted to a jury, even if the written contract had never been executed.
 
 JUDGMENT REVERSED, with directions to grant
 
 10
 A NEW TRIAL.