## CONTINENTAL INS. CO. v. H. SCHULMAN.

### (*Nashville*. December Term, 1917.)

1. **INSURANCE.** Agents. Authority. Parol agreement to insure.
Insurance agents supplied with policies executed in blank by officers of the company with authority to negotiate insurance contract, agree upon premium rates and insurance terms, and to fill in and deliver such policies, may bind the company by a parol agreement to insure. (*Post, p.* 485.)

2. **INSURANCE.** Agents. Agreement to insure. Breach by agent.
Where insurance agent, having implied authority to make preliminary contract to issue policy, commits breach of such contract, the company is liable; the breach being within scope of agent's authority. (*Post, pp.* 485, 486.)

Cases cited and approved: Ellis v. Albany City Fire Ins. Co., 50 N. Y. 402; Angell v. Hartford Fire Ins. Co., 59 N. Y., 171; Sanborn v. Fireman's Ins. Co., 16 Gray (Mass.), 448; Sanford v. Orient Fire Ins. Co., 174 Mass., 416; Cockerill v. Cincinnati Mutual Ins. Co., 16 Ohio, 148; Benner v. Philadelphia Fire Ass'n, 229 Pa. 75.

3. **APPEAL AND ERROR.** Review. Verdict. Conflicting evidence.
Supreme court is bound by jury's verdict on conflicting evidence. (*Post, pp.* 486-488.)

4. **INSURANCE.** Agents. Authority to make parol contract of insurance. Construction of commission.
Insurance agents' commission, giving them authority "to countersign, issue and renew policies of insurance when signed by the officers of the company," did not expressly authorize them to make parol contracts of insurance. (*Post, pp.* 488, 489.)

Case cited and approved: Caldwell v. Insurance Co., 124 Tenn., 593.

140 Tenn.—31.

5. **INSURANCE.** Validity of parol contract of insurance.

A parol contract of insurance, in the absence of statutory inhibition, is valid. (*Post*, p. 490.)

Cases cited and approved: Merchants' Mutual Ins. Co. v. Lynam, 15 Wall., 664; Relief Fire Ins. Co. v. Shaw, 94 U. S., 574; Murphy v. So. Life Ins. Co., 62 Tenn., 440; Duluth Nat. Bank v. Knoxville Fire Ins. Co., 85 Tenn., 77; Aetna Life Ins. Co. *r.* Fallow, 110 Tenn., 720.

6. **INSURANCE.** "General Agents." Authority.

Insurance agents, designated "general agents," are not by reason of such designation substitutes for their employer with authority to do anything the employer might have done but must act within apparent scope of their authority. (*Post*, pp. 490, 491.)

Case cited and distinguished: Walker v. Skipwith, 19 Tenn., 502.

7. **PRINCIPAL AND AGENT.** Apparent authority. Custom.

Where agent usually does certain things respecting his principal's business or if similar agents in the same business usually do like things, the doing of such things are within his apparent authority, regardless of actual or express authority. (*Post*, p. 492.)

8. **PRINCIPAL AND AGENT.** Apparent authority. Unusual acts.

Where agent does a thing unusual or unheard of in his line of business, such thing is apparently beyond scope of his authority (*Post*, p. 492.)

9. **CORPORATIONS.** Executive officer. Authority.

Ahe apparent authority of a chief executive officer of a corporation is necssarily limited by the usage and practice obtaining in the particular line of business in which the corporation is engaged. (*Post*, pp. 492, 493.)

10. **PRINCIPAL AND AGENT.** Apparent authority. Traveling salesman.

The authority of a traveling salesman is necessarily limited to the usage and practice of the particular line of business in which he is employed. (*Post*, pp. 492, 493.)

Continental Ins. Co. v. Schulman.

Cases cited and approved: Bank v. Bank, 132 Tenn., 152; Nixon Mining Drill Co. v. Burk, 132 Tenn., 481; Somerville v. Gullett Gin Co., 137 Tenn., 509.

11. **INSURANCE.** Parol insurance contract. Authority of agents.
Where it was customary for insurance agents to bind the company by parol contract of insurance for period between application and agent's first opportunity to write up policy, which period ordinarily did not extend beyond one or two days and never beyond a week, a parol contract for period of more than two months *held* beyond the agent's apparent authority. (*Post, pp*. 493, 494.)

12. **INSURANCE.** Parol insurance. Policy of law.
The policy of the law *held* to be against parol insurance under Thompson-Shannon Code, section 3274 et seq., relating to insurance. (*Post, p*. 494.)

Code cited and construed: Sec. 3274 (T.-S.).

---

FROM LINCOLN.

---

Appeal from the Circuit Court of Lincoln County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— HON. EWIN DAVIS, Judge.

C. C. TRABUE and GILES L. EVANS, for plaintiff in error.

FLOYD ESTILL, for defendant in error.

MR. JUSTICE GREEN delivered the opinion of the Court.

This is a suit to recover on a parol contract of insurance alleged to have been entered into between

Schulman, the plaintiff below, and Cowden & Co., the latter acting for the Continental Insurance Company. The contract is said to have covered a stock of goods in the town of Fayetteville, which stock was destroyed by fire April 19, 1913, and the amount of insurance claimed to have been agreed on was $2,000.

There was a judgment in favor of Schulman in the trial court which was affirmed by the court of civil appeals, and a petition for *certiorari* filed by the insurance company has been granted and the case heard in this court.

Proof was introduced by the plaintiff below tending to show that on February 15, 1913, he made a contract with L. E. Cowden of the firm of Cowden & Co., agents at Fayetteville for the Continental Insurance Company, whereby the said Cowden, on behalf of the company, insured the plaintiff in the sum of $2,000 on the stock of goods referred to above. The premium agreed to be paid for this insurance was $29 per annum. Schulman testified that he paid Cowden the sum of $10 on account and that Cowden assured him at this time, and subsequently, that the stock of goods was insured. Schulman stated that he applied to Cowden & Co. for his policy several times, but was put off on one pretext and another, and was on each occasion told by these agents that he was protected and his goods were insured. Although there is such a count in the declaration, plaintiff's proof does not tend to show the existence of an executory agreement to insure at the time of the fire, but all his proof

indicates the existence of a consummated contract of insurance, albeit such contract had not been evidenced by a policy. Schulman said that Cowden told him Sherrell had looked over the stock and "it was accepted by the company." He said that when he asked Cowden for a policy that Cowden replied, "You are insured anyway, don't bother about it." "He told me about three times after that I was insured." "You have not got to have the policy, you are safe anyway."

Mrs. Schulman testified that Sherrell came into the store when Shulman was out and began looking around, and, when she asked what he wanted, replied:

"I just wanted to see the goods and see what stock he carries. We insured him, and we wanted to see what stock he carries."

Witnesses introduced by plaintiff below testified to admissions of Cowden that Schulman's stock was "insured," not that there was a promise to insure.

Agents employed to negotiate contracts of insurance, agree upon the rates of premium, the terms of insurance, and supplied with policies executed in blank by the general officers of the company, with authority to fill up and deliver said policies to any one with whom they may make a contract, may bind their principal by a parol agreement to insure.

Authority to make a preliminary contract to issue a policy of insurance is implied necessarily from the other authority conferred on such agents. If they breach a contract to issue a policy of insurance, this is an act committed within the scope of their authority

for which the company is liable. These propositions are sustained by the great weight of authority. The leading cases are *Ellis* v. *Albany City Fire Ins. Co.,* 50 N. Y., 402, 10 Am. Rep., 495; *Angell* v. *Hartford Fire Ins. Co.,* 59 N. Y., 171, 17 Am. Rep., 323; *Sanborn* v. *Firemen's Ins. Co.,* 16 Gray (Mass.), 448, 77 Am. Dec., 419; *Sanford* v. *Orient Fire Ins. Co.,* 174 Mass., 416, 54 N. E., 883, 75 Am. St. Rep., 359. The editor of the note, 69 Am. St. Rep., 143, said that this authority on the part of such insurance agents had never been denied except in one case, namely, that of *Cockerill* v. *Cincinnati Mutual Ins. Co.,* 16 Ohio, 148. This observation was made in 1899. We have found one later case apparently in harmony with the Ohio case, to wit, *Benner* v. *Philadelphia Fire Ass'n,* 229 Pa., 75, 78 Atl., 44, 140 Am. St. Rep., 706. We think, however, the majority rule is correct.

But, as stated in the beginning, we have before us a suit on a parol contract of insurance, not a suit on a parol contract to insure.

We have set out some of the plaintiff's evidence. The agents deny all this, but we are bound by the verdict of the jury. It should be observed, however, that the home office of the company had no knowledge of this alleged contract with Schulman. No record or report of such a contract was made by the local agents. They credited the $10 received from Schulman on a policy covering his household goods, not involved here.

Cowden & Co. are called in the record "recording agents" of defendant insurance company. As such agents, they were supplied with policies signed by the executive officers of the company, and they had authority to effect valid contracts of insurance by countersigning said policies and issuing them.

The commission of Cowden & Co. to act as agents for the insurance company was in the following words:

"The Continental Insurance Company of the city of New York, does hereby nominate and appoint L. E. Cowden and D. C. Sherrell, of Fayetteville, county of Lincoln, State of Tennessee, its agents under firm name of Cowden & Company, to effect insurance upon property located within the limits or in the vicinity of said city, to countersign, issue and renew policies of insurance when signed by the officers of the company, and to consent in writing to assignments and transfers thereof, and to collect premiums for transmission to the company. The power hereby conferred is subject to the rules and regulations of said company, and to such instructions as may from time to time be given by its authorized representatives and may be revoked at any time the company may so elect."

Proof was introduced going to show a custom on the part of such agents as Cowden & Co. to take applications for insurance and make a verbal contract binding on their principals from the time of the application until a policy could be written up. These witnesses, however, said that there was no custom in

the insurance business in Tennessee to carry insurance on property under oral contracts; that such parol agreements of insurance as we have just mentioned were only intended to be in force for a day or two covering the period between the application and a time when the agent had an opportunity to write out the policy. The policy when written bore the date of the application. One of the agents, testifying in reference to this custom, stated that the writing of the policy might be delayed for a week after the parol agreement of insurance. A week was the limit suggested by any witness during which, by this custom, property might be covered under a verbal agreement prior to the issuance of a policy. The testimony of this witness indicated that a delay of a week in writing the policy was unusual, and ordinarily such a policy was written up on the same day or the next day after the negotiations were concluded.

The property in this case was destroyed by fire on April 19, 1913, more than two months after this parol insurance is alleged to have been effected.

It is contended by counsel for Schulman that Cowden & Co. had express authority, under their commission above set out, to bind defendant company by a parol contract of insurance. We do not think this proposition can be maintained.

The commission of Cowden & Co. is not materially different from the commission of the agent considered in *Caldwell* v. *Insurance Co.,* 124 Tenn., 593, 139 S. W., 698, in which case the agent was held not to have

express authority to bind his principal by an oral contract of insurance.

The commission herein shows that the agents were authorized to effect insurance upon property in the vicinity of Fayetteville, "to countersign, issue and renew policies of insurance," etc. We think the phrase quoted indicates the manner in which the agents were authorized to effect insurance; that is, by countersigning, issuing, and renewing policies. No contracts of insurance were contemplated except such as were written and incorporated in written policies.

Both Cowden and the general manager of the insurance company testified that Cowden & Co. had no authority to undertake for the company parol contracts of insurance. Neither principal nor agents understood this commission as conferring any such authority on the agents, nor is there anything in the record to indicate that any one else ever construed the commission as conferring such authority, prior to this suit.

So we are satisfied that these Fayetteville agents had no express authority to bind defendant company by a parol contract of insurance.

It is urged, however, in behalf of Schulman, that Cowden & Co., were general agents of the defendant, and as such general agents had power to make oral contracts of insurance for and in behalf of the defendant covering property within the territory of said agents.

It is undoubtedly true that a parol contract of insurance, in the absence of a statutory inhibition, is valid. *Merchants' Mutual Ins. Co.* v. *Lynam,* 15 Wall., 664, 21 L. Ed., 246; *Relief Fire Ins. Co.* v. *Shaw,* 94 U. S., 574, 24 L. Ed., 291; Joyce on Insurance, section 31; 14 R. C. L., 880; and cases collected in notes, 6 Ann. Cas., 524 and 69 Am. St. Rep., 143.

We may concede therefore that the Continental Insurance Company might have made a binding contract of insurance, covering Schulman's property, resting altogether in parol. Whether the Fayetteville agents could have made such a contract for the company is altogether a different question.

Our cases do refer to local agents, such as Cowden & Co., as general agents. *Murphy* v. *Southern Life Ins. Co.,* 3 Baxt. (62 Tenn.), 440, 27 Am. Rep., 761; *Duluth Nat. Bank* v. *Knoxville Fire Ins. Co.,* 85 Tenn., 77, 1 S. W., 689, 4 Am. St. Rep., 744; *Ætna Life Ins. Co.* v. *Fallow,* 110 Tenn., 720, 77 S. W., 937.

In designating these representatives of the insurance companies as "general agents," it was not intended to declare that they were to be regarded as substitutes for their principals, empowered to transact all manner of business, or to do everything their employers might have done.

This court has said:

"By a general agency is understood not merely a person substituted in place of another, for transacting all manner of business, since there are few instances in common use of an agency of that

description, but a person whom a man puts in his place to transact all his business of a particular kind, as to buying and selling certain kinds of wares, to negotiate certain contracts, and the like." *Walker* v. *Skipwith*, Meigs (19 Tenn.), 503-508 (33 Am. Dec., 161).

In *Murphy* v. *Southern Life Ins. Co.*, supra, the court quoted with approval the following from Bliss on Life Insurance:

"Under this definition, . . . the agents of insurance companies who are scattered over the county (local agents) would seem to be general agents, but not general agents to do all acts connected with procuring applications for insurance."

Then referring to the agent whose authority was being therein considered, this court said:

"If we test the extent of Brown's power as agent at Nashville by the rules laid down in these authorities we must hold that he had all the powers necessary and convenient for the execution of his authority, and that the extent of his powers must be determined by the nature of his business and the apparent scope of his employment therein." *Murphy* v. *Southern Life Ins. Co.*, supra.

So, although agents like Cowden & Co. are characterized as general agents, nevertheless there are limitations on the power of such agents to bind their principals. They must act within the apparent scope of their authority.

If an agent usually does certain things respecting his principal's business, or perhaps if similar agents in the same business usually do like things, the doing of these things is apparently within the authority of such agents, regardless of their actual or express authority. If, however, the agent does a thing unusual or unheard of in his line of business, such thing is, of course, apparently beyond the scope of his authority.

Hence arises this rule of law:

"A general agent for the management of the business or property of, his principal has an authority coextensive in scope with the business intrusted to him, that is, he has implied authority to do in the business, or with the property, what is usual and customary to do in the business or with property of the same kind in the same locality; and, in determining whether an act is within the scope of such an agent's authority, due consideration is to be given to such matters as the character of the business, the manner in which it is usual to carry on such a business, and the manner in which the particular business has previously been conducted." 2 C. J., 643.

The apparent scope of an agent's authority is necessarily limited by the usage and practice obtaining in the conduct of the particular line of business in which he is employed. This is true whether he be the chief executive officer of a corporation (*Bank* v. *Bank*, 132 Tenn., 152, 177 S. W., 74), or a mere traveling salesman (*Nixon Mining Drill Co.* v. *Burk*,

132 Tenn., 481, 178 S. W., 1116, L. R. A., 1916C, 411; *Somerville* v. *Gullett Gin Co.*, 137 Tenn., 509, 194 S. W., 576).

As we have heretofore seen, the evidence in this case shows that it was usual and customary for insurance agents such as Cowden & Co. to undertake parol contracts of insurance binding their principals for the period between the application and the agent's first opportunity to write up the policy.

The proof shows that this period was ordinarily not more than a day or two. It never extended beyond a week.

How then can it be said to have been within the apparent scope of the authority of Cowden & Co. to bind the defendant company by a parol contract of insurance for a period of more than two months? There is no justification in the record for such a conclusion. On the proof before us such an undertaking would have been extraordinary.

But it is argued that Cowden & Co. from time to time told Schulman that he was insured when he made demands for his policy. This is beside the case.

Suppose these agents did make such statements to Schulman. The insurance company had no knowledge of the statements. Making these statements neither added to the powers of the agents, nor widened the apparent scope of their authority.

Statements like these may serve to render agents personally liable to the insured who has been de-

ceived by them, but it is difficult to understand how the rights of the principal, altogether in ignorance thereof, could be affected by such asseverations, no matter how often repeated.

We have several comprehensive statutes in Tennessee which undertake to regulate the insurance business in many of its details. These statutes are collected in Thompson's-Shannon's Code, section 3274, et seq. A perusal of this legislation clearly indicates the policy of our lawmakers to be against parol insurance. It is assumed in our laws that all contracts of insurance are to be written, and provisions are made for regularity and uniformity in such contracts, and there are numerous other provisions in our statutes hard to reconcile with the legal existence of parol insurance.

But these questions are not before us, since we are satisfied, after a careful examination of the record, that the parol contract of insurance relied on by the plaintiff herein was beyond the actual authority and beyond the apparent authority of the agents. Accordingly, such contract was not binding on defendant insurance company, and the court erred in refusing to direct a verdict in the company's behalf.

It results that the judgment of the court of civil appeals and of the trial court will be reversed, and the suit dismissed.