### BANKERS' RESERVE LIFE CO. v. YELLAND.

No. 6038.

Circuit Court of Appeals, Ninth Circuit.

June 9, 1930.

Thatcher & Woodburn, George B. Thatcher, and Wm. Woodburn, all of Reno, Nev. (Thomas F. Ryan, of Reno, Nev., of counsel), for appellant.

W. E. Billings, of Reno, Nev., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge.

In the court below appellant and appellee were respectively defendant and plaintiff, and we shall so refer to them. During all the times herein mentioned one Hickman was defendant's agent with authority at least to solicit for it applications for life insurance, in Utah, Nevada, and Southern Idaho; and in addition to soliciting insurance he exercised some authority in establishing, within his territory, local agencies and selecting local agents. Plaintiff contends that in respect of insurance contracts his powers were much greater than those of an ordinary soliciting agent and, in short, that his position was essentially that of a district manager. There being some evidence to support this view, for present purposes we shall assume it to be correct.

On November 18, 1926, Hickman was introduced to plaintiff's husband, Louis A. Yelland, now deceased, at the latter's ranch, in White Pine county, Nev., and in the course of the following two days presented to him the matter of taking out life insurance, with the result that on November 20th he signed an application (on one of defendant's printed forms) for a policy in the amount of $10,200, with double liability in case of death from accidental causes. In payment of the first premium thereon he executed his promissory note for $237.60 and delivered it to Hickman together with the application. Pursuant to the understanding then had, on November 26th, he submitted to a medical examination by a local physician duly designated by and acting for defendant. Seemingly the examination was satisfactory to the physician, but before either the application or medical report reached defendant's home office at Omaha, Neb., namely, on November 28th, Yelland died from injuries accidentally suffered on the preceding day. Presumably advised that the company's obligations were the same as they would have been had the policy applied for actually been issued, the plaintiff, who is the beneficiary named in and who also signed the application, brought this action and, upon a verdict in her favor, judgment was entered against defendant for $20,400, from which it prosecutes this appeal.

Under the first assignment we have for consideration the propriety of receiving and giving effect to testimony touching alleged conversations with and oral promises made by Hickman prior to the signing and delivery of the written application and promissory note. Without such testimony, admittedly, the judgment cannot stand. In the interest of clarity let it be understood that in considering this specification we put aside entirely for the time being the attendant question of Hickman's power, and we shall assume that he was invested with the authority to make the representations and promises the testimony tends to show he did make. Upon that assumption the only question is whether in the face of the written application the testimony was competent to establish the obligation pleaded.

The first ten paragraphs of the "Application" consist of questions with the answers thereto. The introductory language of the eleventh and last paragraph is: "It is agreed upon behalf of myself and of any person or persons who may have or claim any interest in any policy that may be issued under this application as follows." Following this language and connected therewith are six subparagraphs or heads, the only relevant one of which, No. 2, is as follows: "(2) That under no circumstances shall the insurance hereby applied for be in force until payment in cash of the First Premium, and delivery of the policy to the applicant in person, during his life-time and while in good health." Admittedly the alleged oral promises or representations were made by Hickman to Yelland prior to the latter's execution of this application and agreement, but over appellant's objection, plaintiff was permitted to testify:

"He (Hickman) said, 'If you take it out now,' and my husband said, 'Well, I have the means to take it out, but I don't want to spend the money now; I will need it later on for shearing and sheep expenses.' And he said, 'That don't make any difference, we will take your note for it.' And Mr. Yelland asked if the policy would be in effect just the same as if he paid the cash premium, and he said, 'Yes, just the same, we take that for cash payment.' And he said, 'I have authority to state that.' And my husband said, 'Well, Mr. Hickman, have you authority to say that?' and he said, 'Yes, because I am their Inter-mountain manager, and they don't question any of my actions with regard to the insurance policies whatever.' And, he said, 'Well, the note—would the policy go into effect at the time you take my note?' And, he said, 'Yes, providing you pass Dr. Rand's examination satisfactorily.' And my husband said, 'Well, if it won't go into effect, I will wait until I can pay cash on the policy,

then I will be sure of it,' and he says, 'There is no use taking it out until it goes into effect.' And he said, 'Well, it will go into effect right now, providing you pass Dr. Rand's examination. There is no question about it.' And they signed the contract."

By "the contract" is meant the written application and agreement above described.

It is to be noted that the question for consideration is not one of the waiver or modification of a provision of a written contract by subsequent oral representation or agreement. Nor has it to do with the effect of a contemporary construction by one or both of the parties to a writing, of an ambiguous or uncertain provision thereof. Nor, again, is it a case of a complete contract, with some provisions thereof evidenced by writings and others resting in parol, all being in harmony. As already noted, the alleged oral understanding was had prior to the execution of the application and is directly opposed to a provision thereof the meaning of which no intelligent person could fail to understand. If it be conceded that the condition, "payment in cash," may be an exception to this statement and that under Hickman's explanation Yelland may have reasonably understood that it was satisfied by the promissory note, that cannot be said of the other condition, "That under no circumstances shall the insurance hereby applied for be in force until * * * delivery of the policy to the applicant in person, during his lifetime. * * *" That is too plain to be misunderstood. And it was not in the form of an indorsement or a footnote, but is in the body of the instrument, as one of the prominent provisions thereof, above the signatures of Yelland and of the plaintiff.

When we analyze plaintiff's testimony as above set out and consider the contingencies generally attending the acceptance of applications for life insurance, such as the possible disapproval at the home office of the physical risk notwithstanding the local physician's favorable report, and investigation touching the moral risk which the application here indicates was contemplated as at least a possibility, it is not improbable that all Hickman intended to say was that the note would be received as, or in lieu of, cash, and that the insurance would become effective as soon as, but not earlier than, it would have gone into force had the first premium actually been paid in cash. But we shall assume that, giving to it the widest possible latitude, the testimony would support a finding in accordance with plaintiff's theory, namely, that Hick-

man's promises were that the insurance would become effective immediately following the local medical examination.

■ Manifestly plaintiff must rely upon the application as the basis of her claim, and indeed in her complaint she repeatedly refers to it as "the contract of insurance." How, then, can she escape its plainly expressed terms and conditions? In her brief she argues that the alleged oral promises and representations made prior thereto were the inducing causes or considerations by which her husband was led to sign it and execute his promissory note. But if for that reason the application was void upon the ground that it was made through fraud or mistake, then she has no contract at all for no policy ever issued. See New York Life Ins. Co. v. Fletcher, 117 U. S. 519, 533, 6 S. Ct. 837, 29 L. Ed. 934. Nor are we able to see of what avail to plaintiff the doctrine of equitable estoppel can be. In the first place, the transaction would seem to be wanting in the essential elements of estoppel. By the testimony it is shown that Yelland was disinclined to apply for insurance until he could conveniently spare the money for the first premium, and hence had it not been for Hickman's alleged representations he would have deferred making application, and consequently would have been without insurance at the time of his death. True, because of such representations he executed the note, but that was promptly tendered back by the defendant. How, then, can it be said that he acted upon the representations to the prejudice of himself or the plaintiff? But if on that point a different view could be taken, to recognize the doctrine as a sufficient basis for plaintiff's claim would in effect be to subvert the general rule that where parties have put their contracts into writing, the written instrument, if clear, is conclusive as against all preceding oral agreements and understandings. For it is to be presumed that in all cases where a party seeks to establish an oral agreement as against a subsequent writing, the alleged oral agreement is the more favorable to him.

Plaintiff's main reliance is upon a group of decisions involving the effect upon an issued policy, of untrue answers to questions put to the insured in connection with his application therefor. Of these the leading case, and the one most nearly in point in her favor, is Insurance Co. v. Wilkinson, 80 U. S. (13 Wall.) 222, 225, 20 L. Ed. 617. It has often been cited, sometimes followed, and not infrequently distinguished. As forwarded to the insurance company by its agent, the ap-

plication there considered contained these questions and answers:

"Q. Mother's age, at her death? A. 40.

"Q. Cause of her death? A. Fever."

Upon the death of the insured her surviving husband, the beneficiary, brought suit upon the policy and as an affirmative defense the insurance company alleged that these answers were false and consequently the policy was void. In response thereto plaintiff showed that defendant's agent who solicited the insurance and entered the answers upon the printed form of application was told by both the plaintiff and his wife "that they knew nothing about the cause of the mother's death, or of her age at the time; that the wife was too young to know or remember anything about it, and that the husband had never known her; * * * that, there was present at the time the agent was taking the application, an old woman, who said that she had knowledge on that subject, and that the agent questioned her for himself, and from what she told him he filled in the answer which was now alleged to be untrue, without its truth being affirmed or assented to by the plaintiff or the wife." Commenting upon the subject, the court stated that the parol testimony made it clear beyond question that the applicant did not intend to make the representations imported by these answers when he signed the application and did not know he was doing so and, in fact, had refused to make any statement on the subject. Further, the court said:

"If, however, we suppose the party making the insurance to have been an individual, and to have been present when the application was signed, and soliciting the assured to make the contract of insurance, and that the insurer himself wrote out all these representations, and was told by the plaintiff and his wife that they knew nothing at all of this particular subject of inquiry, and that they refused to make any statement about it, and yet knowing all this, wrote the representation to suit himself, it is equally clear that for the insurer to insist that the policy is void because it contains this statement, would be an act of bad faith and of the grossest injustice and dishonesty. And the reason for this is that the representation was not the statement of the plaintiff, and that the defendant knew it was not when he made the contract; and that it was made by the defendant, who procured the plaintiff's signature thereto."

Under these circumstances the doctrine of equitable estoppel was recognized as being applicable.

We do not here attempt to follow or set out the reasoning of the court. If it be true that some of the general language may, under a liberal construction, be broad enough, possibly, to cover the instant case, the decision must be deemed to have been restricted to a narrower range by later decisions. Consider, for example, Insurance Co. v. Lyman, 82 U. S. (15 Wall.) 664, 669, 21 L. Ed. 246, decided only a year later. In that case was involved a policy of marine insurance for which at first there were oral negotiations but later a written application. Among other things, the court, speaking through Mr. Justice Miller, who had written the opinion in the Wilkinson Case, said:

"Undoubtedly a valid verbal contract for insurance may be made, and when it is relied on, and is unembarrassed by any written contract for the same insurance, it can be proved and become the foundation of a recovery as in all other cases where contracts may be made either by parol or in writing. But it is also true that when there is a written contract of insurance it must have the same effect as the adopted mode of expressing what the contract is, that it has in other classes of contract, and must have the same effect in excluding parol testimony in its application to it, that other written instruments have. * * *

"We think it equally clear, that the terms of the contract having been reduced to writing, signed by one party and accepted by the other at the time the premium of insurance was paid, neither party can abandon that instrument, as of no value in ascertaining what the contract was, and resort to the verbal negotiations which were preliminary to its execution, for that purpose. The doctrine is too well settled that all previous negotiations and verbal statements are merged and excluded when the parties assent to a written instrument as expressing the agreement."

This view we do not find to be out of accord with anything decided in American Life Insurance Co. v. Mahone, 88 U. S. (21 Wall.) 152, 22 L. Ed. 593; New Jersey Mutual Life Ins. Co. v. Baker, 94 U. S. 610, 24 L. Ed. 268; Continental Life Ins. Co. v. Chamberlain, 132 U. S. 304, 10 S. Ct. 87, 33 L. Ed. 341; or Fire Ins. Ass'n v. Wickham, 141 U. S. 564, 12 S. Ct. 84, 35 L. Ed. 860, all cited by plaintiff. In the last, the facts are without analogy, and in each of the others there was involved only the question of what effect should be given to a contemporary construction by the insurance company, acting through its agent, of a question embraced in its standard form of application.

It may be that if there were herein involved the effect of a false answer descriptive of the risk, New York Life Ins. Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934, could be distinguished upon the same ground upon which therein the Wilkinson Case was distinguished. But we are considering here the effect, not of a false answer made as an inducement for the execution of the contract in suit, but of an express and unambiguous provision of the writing upon which plaintiff's cause of action is predicated.

Finally, we direct attention to Northern Assurance Co. v. Grand View Building Ass'n, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213, where, as in the Lyman Case, supra, the issue involved conditions more closely analogous to those we are considering, and where may be found an elaborate review of the court's earlier decisions. There, as here, the plaintiff relied upon the Wilkinson Case and of it, after stating the facts thereof, the court at page 350 of 183 U. S., 22 S. Ct. 133, 148, said:

"The defense made upon that statement was, in legal effect a denial of the execution of the statement—a defense that can always be sustained by parol evidence. However this may have been, we are unwilling to have the case regarded as one overthrowing a general rule of evidence. Some of the remarks contained in the opinion might seem to bear that interpretation, but not necessarily so.

"That Mr. Justice Miller did not intend, in the case of Insurance Co. v. Wilkinson, to lay down a new rule of evidence in insurance cases, is clearly shown in the subsequent case of Insurance Co. v. Lyman, 15 Wall. 664, 21 L. Ed. 246, where the opinion was delivered by the same learned justice, and who used the following language."

We conclude that it was error to admit the testimony, and inasmuch as without it apparently plaintiff cannot establish a claim, we discuss none of the other numerous assignments.

Reversed.