THETFORD et al. v. HARTFORD FIRE INS. CO. et
al.—183 S. W. (2d) 314.

Western Section.   March 24, 1943.

Petition for Certiorari granted by Supreme Court, July 3, 1943.

Affirmed by Supreme Court, May 6, 1944.

Taylor, Adams & Freeman and Holmes & Holmes, all of Trenton, for plaintiffs in error.

Waldrop & Hall, of Jackson, and L. L. Harrell, of Trenton, for defendants in error.

ANDERSON, P. J. The original plaintiffs, Cecil Thetford and his mother, Mrs. Etta Thetford, instituted this action to recover from the defendant, Hartford Fire Insurance Company and R. E. Herron, its agent, compensation for the loss by fire of their home and its contents. As originally filed, the declaration contained two counts. The first averred that the defendant Herron acting as the agent for the defendant Insurance Company, insured the house of the plaintiffs and its contents against loss by fire and that on January 26, 1940, the insured property was totally destroyed. The loss was laid at

$1400. The plaintiffs insist that the second count charges an oral agreement to insure the property.

After the agent's demurrer to the declaration as originally filed had been sustained, a third count was added, wherein the company was sued on the ground that the agent acting within the scope of his authority had agreed to complete a signed application for insurance on the property and to obtain and deliver a policy thereon, assuring plaintiffs that their property was from that time insured; that plaintiffs relied on this agreement and representation and permitted other insurance on their property to remain suspended for nonpayment of installment premiums theretofore due thereon, and that the defendant through its agent was negligent in not forwarding the application signed by the plaintiffs to the proper office of the company and in not acting upon the application within a reasonable time.

The defendant company filed appropriate pleas to the declaration and the case came on for trial before the Circuit Judge and a jury. At the conclusion of the plaintiffs' evidence a verdict was directed for the defendant and the plaintiffs appealed in error.

The case stands against the company only and the question to be determined is whether there was any material evidence to take the case to the jury as to that defendant.

Prior to the transactions here involved, the plaintiffs had a policy of fire insurance on the property that had been issued by the Franklin Fire Insurance Company. This was a 5-year policy, the premium being payable in annual installments on December 1st of each year. The agent through whom this policy had been issued sold his agency to a firm in another county and the plaintiff was solicited by the defendant's agent, Mr. Herron, and a

coworker to change the insurance from the Franklin Company to the defendant company. This solicitation first occurred some time prior to the date on which the December, 1939, installment of the premium was due the Franklin Company. The plaintiff, Cecil Thetford, told the agents that when the policy with the Franklin Company expired he would give them the business. Sometime thereafter he decided to do this and did not pay the installment premium that was due December 1, 1939, to the Franklin Company. Thinking, so he testified, that he had a 30-day grace period during which the property would be covered notwithstanding the nonpayment of the premium, he waited until January 1, 1940, to consult the defendant's agent, Mr. Herron, and advise him that he was going to place his insurance with him. He saw Mr. Herron on that date and told him that he desired to obtain other insurance or pay the premium to the Franklin Company.; that the question with which he was concerned was about having to pay the short-rate' premium in case he cancelled the Franklin policy and gave the business to Mr. Herron. The latter assured the plaintiff that if he would give him the business the policy could be cancelled without the plaintiffs' having to pay the short-term premium. Mr. Herron then dictated a letter addressed to the Franklin Fire Insurance Company at Chicago, Illinois, to be signed by the plaintiff, wherein the Franklin Company was advised that the plaintiff was enclosing the policy in that company for cancellation with the request that all of his premium notes be returned. This letter was turned over to Mr. Thetford by Mr. Herron and subsequently forwarded to the Franklin Company.

Plaintiff, Cecil Thetford, who handled the entire matter for himself and his mother, testified that on the same occasion he signed a printed application, partially com-

pleted, addressed to the defendant company, for insurance on the property for a term of five years. Having done this, he was assured by the agent that "you are fully covered, your insurance is in effect now", and that a policy would be delivered to him later. The agent told Thetford that when he heard from the Franklin Company to let him know about it.

On or about January 8, 1940, the plaintiff received information from the Franklin Company that the policy would not be cancelled except upon payment of the short-rate cancellation charge. Shortly thereafter he met Mr. Herron on the street and advised him of the attitude of the Franklin Company. Mr. Herron said, "That is all right. Go right ahead and don't worry about your situation. You are protected any way, you go right ahead. It will probably take two or three letters to get that cleared up or they will probably send a representative out to see you but we will get it done"; "that he would get me a policy later"; "to go on and rest easy and he would take care of the situation."

The plaintiff did not pay the short-rate premium to the Franklin Company and that policy was not cancelled but remained in a suspended state because of the insured's failure to pay the installment of the premium due December 1, 1939. Nothing further was done by any of the parties. The plaintiff's property was completely destroyed by fire on January 26, 1940. At that time the agent had neither delivered a policy nor returned the plaintiff's application.

The day after the fire the plaintiff reported the destruction of the property to the agent, who told the plaintiff that "he wasn't responsible for my loss, that I hadn't done what I said I would do, hadn't done nothing I'd said I would do and he wasn't responsible for my loss."

In all the counts of the declaration it was alleged that the plaintiff not only signed the written application for the insurance but that he signed a note covering the first installment of the premium and that this note was accepted by the agent for what it purported to be and that it was after such acceptance the agent told the plaintiff that the property was insured.

On his direct examination the plaintiff testified that when "he wrote my application or filled in part of my application I signed the note to the Company for the other four premiums", and that the agent told him that he could pay half of the first installment in thirty days and the other half in 60 or 90 days. On cross-examination he testified that the note he signed was attached to the bottom of the application and that he understood that the "four-year note went to the Company for the other four years premiums and the first year's premium went to Mr. Herron." He then testified that he signed only one note; that "I signed the note for whatever it called for and I couldn't now state" the amount of it, but that "I think it was figured out", a definite amount for each year. He then testified that he signed his name and his mother's to the note. He was then asked, "Of course you understood that unless you paid for the insurance by note or cash that you had no insurance." To this he responded, "Well, that is correct."

On cross-examination, when shown the application to which was attached the premium note. Thetford frankly admitted he was mistaken about it; that he had signed no application and executed no note for the premium. He also admitted that the application was not completed in other respects; that the amount of the premium was not agreed on; that "he (the agent) had approximately what the amounts set aside for each building would be", and

that "he put down the amount on another piece of paper and figured the exact amount and stated if I wanted to make any change about it I could."

The printed application introduced in evidence does not show the aggregate amount of insurance in the blank space provided therefor, nor does it show when the term of five years was to begin, or the rate to be charged, or the several items of property, all of the space provided for these items being left blank. It does contain however separate amounts opposite each of the several different classes of property, which the policy was to cover. It also contains the representation that there was no other insurance on the property.

There was no evidence that the defendant company had any information concerning the transactions between the plaintiffs and its agent until after the fire had occurred and demand for payment was made.

In our view of the case the principal question for decision is whether it was within the apparent scope of the authority of the agent to bind the defendant company by an oral contract of insurance for the period mentioned. To support this essential element of the action, the plaintiffs introduced several witnesses who testified to the custom of fire insurance companies, including the defendant, prevailing in the vicinity.

Mr. Bagus who was formerly connected with the defendant's agency at Trenton testified that it was the defendant's custom, acting through its agent, "to accept applications and insure the property from the minute that you make the application"; that that was the way it was usually done. He also testified that such was the custom of fire insurance companies doing business in that vicinity.

On cross-examination he testified that there was a difference in the manner in which insurance on farm

property, such as here involved, and insurance on property located in town, was handled. As to this, he testified in substance that in the case of farm property "the application is made out and the premium notes taken or cash collected and sent in to the Company and the Company alone executes the policy", whereas on town property "the agent may bind the Company by issuing the policy immediately." He further said that the company did not issue a policy on farm property until the application was submitted and received by it; that when the application is so received "they immediately send the policy back or the rejection back."

Testimony of the other witness as to the prevailing custom was substantially to the same effect.

It will be borne in mind that we are not here dealing with the authority of what is generally known as a "recording agent" expressly authorized to issue and deliver a contract of insurance without first submitting the matter to his principal. Here, by the undisputed evidence, the agent had no such authority with respect to farm property but was required to submit a written application to the general office of his company, which had a right to accept it and issue a policy or reject it and decline to do so.

The custom proven embraced this right of acceptance or rejection by the principal. It is clearly implied in this proof, if it does not expressly appear, that the custom was that the coverage attached from the date the application was taken by the agent in the event it was subsequently accepted by the principal. The custom shown cannot be construed as meaning that the property was covered from the time the application was taken even though the principal might exercise his right to reject it.

■ Indeed, we are unable to perceive how the custom here shown could ever operate to enlarge the scope of an agent's express authority in a case such as we have here. The right to reject the application for a policy, it seems to us, clearly negatives the idea that the agent was authorized to bind the principal in the manner claimed. The custom relied on embraces the right on the part of the company to refuse to undertake the very obligation which it is claimed the custom shows the agent had authority to impose upon it without its consent. The two ideas seem to us to be in irreconcilable conflict.

■■ The rule that proof of custom can be used to add to the agent's express authority is bottomed on the idea that the practice has prevailed to an extent that the principal either knows or should know of it and has acquiesced therein or must be held to have done so. The underlying principle is that of equitable estoppel. The custom operates as an entirety and works both ways. It is no less binding on the one party than the other. One relying on it cannot invoke that part favorable to his contention and ignore that which is unfavorable.

The custom shown in the present case does not fit the facts. The transaction between the plaintiffs and the agent, as well as the custom, contemplated that the application would be submitted to the insurer for acceptance or rejection. This was not done; nor was it expected by either party that it would be done until and unless the Franklin policy had been cancelled without the plaintiffs' being required to pay the short-term premium.

The only reasonable view that can be taken of the evidence is that the agent assured the plaintiff that his property would be covered by insurance, not during the time required to send in the application and have the policy issued, but pending the cancellation of the policy

in the Franklin Company without the payment of the short-term rate. In other words, if the proof shows anything, it shows that the agreement was that the application would be held up until the other policy was cancelled without the payment of the short-term rate and that when this was done and the application completed the agent would send it in and procure the defendant to issue a policy and that the plaintiff's property would be covered by insurance pending these things being done.

There is no proof in the record that there was any custom or usage obtaining in the insurance business in that vicinity for agents to undertake to bind their principals by oral contracts of insurance for such indefinite period as is here involved and pending the consummation of such transactions. Upon the contrary, the evidence with respect to the custom was that in practice the agents would not take an application for the issuance of a policy and the company would not issue one where there was another outstanding policy on the property, even though it were suspended for the nonpayment of an installment premium. So far as appears, the practice followed in the present instance, instead of being usual and customary, can be regarded only as most extraordinary. There is nothing whatever to indicate that the defendant ever had any actual knowledge of such a practice and in the absence of any custom with respect thereto, it could not be said reasonably that it had constructive knowledge of it in such a way as to warrant the conclusion that the custom had broadened the scope of the agent's express authority to the extent that he could bind it in the manner claimed.

It is true that the plaintiff testified that when he had learned that the Franklin Company would not cancel its policy without the payment of a short rate, he told the

agent about that and the agent said in substance ''that is all right, you are protected any way and you go right ahead. It will probably take two or three letters to get that cleared up'', etc. But this can avail the plaintiffs nothing. There was no evidence that the defendant had any knowledge of such a statement, actual or constructive, and such statements by the agent did not operate to enlarge the apparent scope of his authority. Continental Ins. Co. v. Schulman, 140 Tenn. 481, 205 S. W. 315. The principles laid down in that case, we think, control a disposition of this one.

But it is insisted that in any event the plaintiffs were entitled to go to the jury on the third count. As already said, the gist of that count as construed by the plaintiffs is the alleged negligence of the defendant in not issuing a policy within a reasonable time, which presupposes that the agent was negligent in not sending in to the proper office the application for the policy and that this negligence was imputable to the defendant. Obviously the theory of this count is based upon the alleged agreement of the agent to submit to the defendant an application for the insurance, and the assumption that if it had been submitted the company would have been bound to issue a policy within a reasonable time.

If it be assumed to have been within the scope of the agent's authority to make such an agreement, which under the showing here made we do not hold, we think the facts above stated furnish the answer to the plaintiff's contention. In no view of the case was there any obligation resting on the defendant to issue a policy until it received an application from the agent and accepted it, or at least had a reasonable time within which to do so. No obligation rested on the agent to send in the applica-

tion because it was not signed and was otherwise incomplete and the premium note was not executed.

Moreover, as above stated, it was a condition of the agreement with the agent that the policy in the Franklin Company would be cancelled upon terms satisfactory to the plaintiffs before the application was to be sent in. There was no compliance with this condition.

Again, if it be permissible to look to the evidence of custom for the purpose, it appears without dispute, all other questions aside, that the company would not have issued a policy so long as the policy in the Franklin Company was outstanding and was under no obligation to do so.

As to the alleged failure to notify plaintiffs that it would not issue a policy, we think that for the reasons already indicated the facts gave rise to no such duty on the part of the defendant.

There are perhaps other reasons why the plaintiffs are not entitled to go to the jury on the third count, but these are enough. The result is the judgment is affirmed at the cost of the plaintiffs.

Ketchum and Baptist, JJ., concur.