No. 24,483.

NORA T. COWLES, *Appellee,* v. THE CONNECTICUT FIRE INSURANCE COMPANY, THE RETAILERS FIRE INSURANCE COMPANY, and THE LIVERPOOL & LONDON & GLOBE INSURANCE COMPANY, *Appellants.*

SYLLABUS BY THE COURT.

1. FIRE INSURANCE—*Appraisers—Failure to Agree—Action on Policy.* Under an insurance contract providing that in case of a disagreement of parties as to the amount of the loss each shall appoint an appraiser, and the two appraisers shall select an umpire and appraise the loss, and that an action on the policy will not lie until such appraisal is made, the insured who appoints an appraiser in good faith and the appraisal fails through a disagreement of the appraisers as to an umpire without fault of the insured, he has discharged his obligation and satisfied the requirements of the policy and may then resort to the courts to have his loss determined, following *Jerrils v. Insurance Co.,* 82 Kan. 320, 108 Pac. 114.

2. SAME—*Failure to Agree Upon Appraisers—Fault of Insurer.* Where the appraiser appointed by the insured proposes several persons for umpire who reside in the city where the fire occurred and the appraiser appointed by the insurer arbitrarily refuses to accept any one residing in that place, regardless of his competency or fairness, and insists than an umpire shall be selected from another locality, the investigation of whose fitness would occasion delay and expense, the failure of an appraisement cannot be regarded as the fault of the insured and he is warranted in treating the condition as waived or abandoned.

3. SAME—*Evidence—Verdict.* The evidence as to the extent of the loss examined, and *held* to be sufficient to uphold the verdict of the jury.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed May 12, 1923. Affirmed.

*George B. Rittenhouse, F. A. Rittenhouse,* and *P. T. McVay,* all of Oklahoma City, Okla., for the appellants.

*W. L. Cunningham,* of Arkansas City, and *C. W. Crossan,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Nora T. Cowles brought separate actions against each of three defendant insurance companies to recover for losses of merchandise, furniture and fixtures caused by a fire to property upon which each defendant carried a certain amount of insurance. The merchandise destroyed was in a store at Edmond, Okla. The actions were consolidated and tried as one case, resulting in a verdict finding that the entire loss to merchandise was $22,500 and the loss of furniture and fixtures was $950. The losses so found were apportioned among the several defendants in pursuance to a stipulation on the basis of the amount insured under each policy issued by the several defendants, as follows: The Liverpool & London & Globe Insurance Company, $11,792.66; The Connecticut Fire Insurance Company, $6,627.78; and the Retailers Fire Insurance Company, $5,089.56. On the trial of the case it was agreed in open court that the damage to the furniture and fixtures was $922.44.

On their appeal only two questions are presented by the defendants. One is, that the plaintiff is not entitled to a recovery because of a refusal to submit to an appraisal of the property burned and injured as provided in the policy, and the other is, that the amount found to be the loss on goods was excessive. Each policy contained a provision that if there was a disagreement as to the amount of loss that it should be ascertained by three competent appraisers; the insured and the company each to select one; the two so chosen to select a disinterested umpire and the three should determine the amount of the loss. There being a disagreement as to the amount of the loss the plaintiff chose D. A. Walker as appraiser and the defendants designated Eugene Miller. These appraisers met and considered the appointment of an umpire, but were unable to agree. It is contended by the defendants that the plaintiff did not attempt in good faith to agree upon an umpire or secure an appraisement. The fitness and fairness of Walker for the task is attacked, but the evidence does not justify the claim that he lacked the intelligence and integrity necessary to a fair and just appraisement, or that he was actuated by a purpose to thwart or

defeat an appraisement. He submitted a list of three persons residing in Edmond where the fire occurred, said to be a city of over 3,000 people, but Miller rejected all of them without making inquiry or investigation as to their fairness or fitness. At the same time Miller proposed several persons more or less remote from Edmond, but because of their business connections and relationship with Miller these were not acceptable to Walker. The latter suggested that some competent business man of Edmond should be chosen, but Miller would not even consider any one who resided there and stated that no one from Edmond would be acceptable to him. After several attempts to agree, running through a number of days, during which time Miller insisted that only some one away from Edmond should be selected, both parties concluded that an agreement upon an umpire could not be reached. Can it be said that plaintiff is barred from a recovery of her loss because of the fact that the appraisers failed to agree on an umpire, or that no appraisement was had? In apparent good faith she appointed an appraiser and without fault on her part no appraisement was made. She had then discharged her obligation so far as the stipulated appraisement was concerned and was therefore entitled to maintain an action to recover her loss. In a similar case where the parties each appointed an appraiser and they had failed to agree upon an umpire it was held:

"The insured discharges his obligation in that respect when he appoints an appraiser in good faith; and, where the two appraisers fail to agree upon an umpire and the appraisement fails without the fault of the insured, he is not required to propose the selection of other appraisers, but may maintain an action upon the policy." (*Jerrils v. Insurance Co.*, 82 Kan. 320, syl. ¶ 1, 108 Pac. 114.)

While the defendants contend that the plaintiff did not act in good faith and that the appraisement failed by reason of the fault of her appraiser, the finding of the jury negatives the charge. The good faith and fairness of the plaintiff in the matter of appraisement was submitted to the jury by the trial court on the approved theory of *Jerrils v. Insurance Co.*, supra, instructing them that good faith on the part of plaintiff was essential, that the burden was upon her to prove that before bringing the action she appointed or caused to be appointed an appraiser in good faith, and that an appraisement failed without fault on her part, and further that, if she did not show good faith and freedom from fault in this respect, the

verdict must be for defendants.    There were no special findings but the general verdict determined these questions in her favor.

The action of Miller in refusing to accept any person as umpire who resided in the city where the fire occurred without investigation or regard to the qualifications or fairness of such person, and his insistence on selecting one remote from the vicinity of the place of loss, was arbitrary and unreasonable.    There was no evidence or effort to show that competent and fair persons could not have been found in Edmond to act as umpire.    On the contrary Miller arbitrarily eliminated them simply because they lived in Edmond and he stated that he knew of no objections to those suggested by Walker, except that they resided in the place where the fire occurred. He also testified that the parties came to a point in their parley where there was no chance of agreement upon an umpire.    It has been held that an arbitrary insistence that an umpire shall be chosen from another locality which would necessarily cause delay and expense in investigating his fitness, justifies the insured in regarding the appraisement as abandoned by the insurer.    It was said:

"The agreement does not contemplate that the umpire shall be selected at random, or without some knowledge on the part of both appraisers as to his competency and fitness.  Parties living in the locality would naturally be best qualified to pass upon the question of values, and an appraiser would not be under obligation to make trips to other localities than that of the fire to ascertain as to the propriety of appointing the person suggested as an umpire. The agreement contemplates an inexpensive method of settlement.  Strangers to the locality are not usually selected as appraisers, and, in case of the inability of the appraisers to agree, a third party known to both, and in whom both have confidence, is supposed to be selected.  An investigation as to the parties named by defendant's appraiser would have been productive of expense and delay. . . .  The suggestion that some one be selected from the locality of the fire was not unreasonable.  It is well settled that where the conduct of the company's appraiser in refusing to agree on an umpire is inexcusable, and virtually amounts to a refusal to proceed with the appraisement, the fact that the appraisement was not concluded before suit brought will not bar an action on the policy." (*Brock v. Insurance Co.,* 102 Mich. 583, 592, 593; see also, *McCullough v. Phoenix Ins. Co.,* 113 Mo. 606; *Bishop v. A. Ins. Co.,* 130 N. Y. 488; *Chapman v. Rockford Ins. Co. and others,* 89 Wis. 572; *Hickerson & Co. v. Insurance Companies,* 96 Tenn. 193; *Young v. Ins. Co.,* 101 Me. 294.)

The remaining contention is that an excessive award was made by the jury.    There was a conflict in the evidence as to the amount and value of the stock of goods injured or destroyed.    An abundance

of testimony was produced by the plaintiff to the effect that the goods in the store before the fire were of the value of about $30,000, and that what remained after the fire was only worth about $3,000. It is claimed that plaintiff admitted that there had been a decrease in the cost price of shoes of about 40 per cent, and a decrease of 35 per cent in other goods and that if these deductions were made the loss would be much less than the amount found by the jury. Some of plaintiff's testimony did indicate a marked shrinkage in the price of shoes and some other kinds of merchandise, but no special findings were made and we have no means of determining what amount the jury allowed for shoes or the different classes of goods in the store. As to plaintiff's testimony in that respect it may be said that she stated that she was willing that 40 per cent should be taken off the cost of shoes and 35 per cent off of other stock, but that the proposal was made in order to obtain a cash settlement and avoid delay and litigation. An examination of the record discloses that plaintiff's evidence all considered fully supports the finding of the jury as to the extent of the loss. They believed the testimony of the plaintiff rather than that of defendants and according to well settled rules the verdict ends the controversy.

Finding no error in the record the judgment is affirmed.