**NATIONAL BULK CARRIERS, Inc., v. UNITED STATES (two cases).**

**Nos. 1567, 1568.**

District Court, D. Delaware.

Sept. 11, 1944.

Abel Klaw, of Wilmington, Del., Leonard J. Matteson (of Bigham, Englar, Jones & Houston), and Samuel D. Antopol, both of New York City, for libellant.

Francis M. Shea, Asst. Atty. Gen., J. Frank Staley, Arnold W. Knauth, and Lester P. Schoene, Sp. Assts. to Atty. Gen., and John J. Morris, Jr., U. S. Atty., of Wilmington, Del., for respondent.

LEAHY, District Judge.

These suits are for recovery of loss of the ships the "Mulligan" and "Bloom."[1] The libels and exceptions are identical in form. The case of the "Mulligan" (No. 1567) only will be discussed, but the dis-

---

[1] As these vessels were lost as a result of enemy action at sea, they have been given fictitious names. The real names of the ships and the locus of destruction are detailed in the pleadings. In accordance with Admiralty Rules 44–46 of the Supreme Court the pleadings have been impounded and all hearings are held in camera.

cussion will apply mutatis mutandis to the "Bloom" (No. 1568).

The United States of America, acting through the War Shipping Administration, requisitioned the "Mulligan" and gave libellant the standard form of receipt.[2] As stated in the receipt, the Administrator requisitioned the vessel pursuant to the authority granted in Sec. 902 of the Merchant Marine Act, 1936, as amended, 46 U.S.C.A. 1242.[3]

On May 12, 1942, the "Mulligan" became a known total loss at sea. Sec. 902 of the Merchant Marine Act, 1936, as amended, provides that the Administrator "at the time of the taking or as soon thereafter as the exigencies of the situation may permit, shall transmit to the person entitled to the possession of such property a charter setting forth the terms which, in the Commission's judgment, should govern the relations * * *." It was evidently not practicable to tender a charter on April 20, 1942, at the time the "Mulligan" was requisitioned. In any event, the agreement of requisition time charter Form 102, Warshipoiltime Contract No. WSA–2147–R, was not executed until some time after the known loss of the "Mulligan." But, it nevertheless recites that it was executed as of April 20, 1942 between libellant and the United States of America. From the charter it appears that the libellant elected War Risk Insurance Valuation Option II,[4]

---

[2] The receipt is substantially in the following form: "This is to certify that the War Shipping Administrator has requisitioned possession and use on time charter basis of * * * 'Mulligan', pursuant to Section 902 of the Merchant Marine Act, 1936, as amended; that the undersigned * * *, acting for and on behalf of the War Shipping Administrator, has taken delivery of said vessel under said requisition * * * and that said requisition has become effective at said date and hour."

[3] Subparagraph (a) of the Act authorizes the Administrator (formerly the Maritime Commission) to requisition or purchase any vessel owned by citizens of the United States during the period of a national emergency declared by the President or "to requisition or charter the use of any such property" and further provides that "when any such property or the use thereof is so requisitioned, the owner thereof shall be paid just compensation for the property taken or for the use of such property, but in no case shall the value of the property taken or used be deemed enhanced by the causes necessitating the taking or use."

Subparagraph (b) of the Act contains a provision with respect to the valuation of vessels taken on which a construction differential subsidy has been allowed and paid, and further provides that as to any other vessel "the value of any national defense features previously paid for by the United States shall be excluded."

Subparagraph (c) provides, in part, as follows:

"If any property is taken and used under authority of this section, but the ownership thereof is not required by the United States, the Commission, at the time of the taking or as soon thereafter as the exigencies of the situation may permit, shall transmit to the person entitled to the possession of such property a charter setting forth the terms which, in the Commission's judgment, should govern the relations between the United States and such person and a statement of the rate of hire which, in the Commission's judgment, will be just compensation for the use of such property and for the services required under the terms of such charter." The sub-paragraph concludes as follows: "In the event of loss or damage to such property, due to operation of a risk assumed by the United States under the terms of a charter prescribed in this subsection, but no valuation of such vessel or other property or mode of compensation has been agreed to, the United States shall pay just compensation for such loss or damage, to the extent the person entitled thereto is not reimbursed therefor through policies of insurance against such loss or damage."

Subparagraph (d) of the Act provides, in part, as follows:

"In all cases, the just compensation authorized by this section shall be determined and paid by the Commission as soon as practicable, but if the amount of just compensation determined by the Commission is unsatisfactory to the person entitled thereto, such person shall be paid 75 per centum of the amount so determined and shall be entitled to sue the United States to recover such further sum as, added to said 75 per centum will make up such amount as will be just compensation therefor, in the manner provided for by sections 41 (20) and 250 of Title 28."

[4] The charter provides as follows:

"E. War Risk Insurance Valuation:

"Option II—Just compensation to be determined in accordance with Section

with "just compensation to be determined in accordance with Section 902· of the Merchant Marine Act, 1936, as amended." By the terms of the charterparty it was further agreed between the parties herein as follows:

"20. Unless otherwise mutually arranged, at all times during the currency of this Charter the Charterer shall provide and pay for or assume: (i) insurance on the Vessel, under the terms and conditions of the full form of standard hull war risk policy of the War Shipping Administration, which shall include malicious damage, sabotage, strikes, riots and civil commotion, insured for and valued at the amount set forth in Part I which insurance shall be made payable to the persons entitled thereto; (ii) all war risk insurance, as required, on the lives of or for injuries to officers and crew and loss or damage to their personal effects, including sextants of deck officers, on leased equipment aboard for which the Owner is responsible to the extent not otherwise covered hereunder, on slop chests, on the actual value of the Vessel's unused consumable stores and · on cash carried on board but not in excess of $5,000. unless otherwise agreed; and (iii) war risk protection and indemnity insurance, for the benefit of the Owner and the Charterer as their interests may appear, including Owner's liabilities to officers and crew until repatriated."

Pursuant to the provisions of the charter, the Administrator, on August 1, 1942, issued "War Risks Binder [RC No. 539.] covering vessels requisitioned by the War Shipping Administration." It is provided in the binder that the premium is to be paid by the War Shipping Administration.[5] By endorsement No. 2 of the charter[6] it is again agreed that in the event of loss, just compensation is to be determined in accordance with Sec. 902 of the Merchant Marine Act, 1936, as amended.

These suits are filed pursuant to Secs. 1128 to 1128h of 46 U.S.C.A. Section 1128a authorizes the Administrator (formerly the Commission) to "insure against loss or damage by the risk of war, persons, property, or interest," as follows: "(a) (1) American vessels (including vessels under

---

902 of the Merchant Marine Act, 1936, as amended, for any loss or damage due to the operation of a risk assumed by the Charterer under the terms of this Charter to the extent the person thereto is not reimbursed therefor through policies of assurance against such loss or damage."

[5] This legend on the policy would indicate that the Administrator elected to perform its obligation under Clause 20 of the charter to "provide and pay for" war risk insurance on the vessel. Sec. 221(b) of the Merchant Marine Act, 1936, as amended, 46 U.S.C.A. § 1128 (b) creates in the Treasury of the United States an insurance fund: ·

"There shall be in the Treasury of the United States a revolving fund to be known as the marine and war-risk insurance fund (hereinafter referred to as the fund), to be used for carrying out the provisions of sections 1128–1128g of this title, and to be constituted of such sums as may be appropriated to such fund and of moneys and receipts credited thereto as herein provided. There are hereby authorized to be appropriated to such fund such sums as may be necessary to carry out the provisions of sections 1128–1128g of this title. All moneys received from premiums and from salvage or other recoveries, and all receipts in connection with sections 1128–1128g of this title, shall be de-

posited to the credit of such fund. Payments of return premiums, losses, settlements, judgments, and all liabilities incurred by the United States under sections 1128–1128g of this title shall be made from such fund." June 29, 1936, c. 858, Title II, § 221, as added June 29, 1940, c. 447, 54 Stat. 689, and amended Apr. 11, 1942, c. 240, 56 Stat. 214.

It is alleged in the amended libel, and not controverted, that insurance was duly provided by the Administrator (War Shipping Administration) by entering such insurance in the Marine War Risk Insurance firm created by the Treasurer of the United States under the provisions of the Act of June 29, 1940, c. 447, 54 Stat. 689, 46 U.S.C.A. § 1128(b), and appropriate premiums for such insurance were paid by the Administrator out of operating funds into said insurance fund.

[6] The endorsement provides as follows:

" 'Mulligan.' Warranted in event of loss just compensation to be determined in accordance with Section 902 Merchant Marine Act, 1936, as amended, for any loss or damage thereto due to the operation of a risk assumed by the Charterer under the terms of this charter to the extent person entitled thereto is not reimbursed therefor through policies and insurance against such loss or damage."

construction) * * *." Sec. 1128d[7] purports to give the district courts jurisdiction of actions on claims for losses.

The government has filed three exceptions to the libel. The first exception is that (a) the binder was of no effect as an insurance contract because it was issued after the loss was known to have occurred, and (b) in any event, the binder was merely a restatement in a different form of a pre-existing obligation to make payment of just compensation.

The second exception is that libellant elected War Risk Insurance Valuation Option II, providing for "just compensation to be determined in accordance with Section 902 of the Merchant Marine Act, 1936, as amended"; and that Sec. 902(d) of the Act, as amended, 46 U.S.C.A. § 1242(d), expressly provides that suits thereunder must be brought either in the manner provided for by Sec. 41(20) or Sec. 250 of 28 U.S.C.A.; and that under Sec. 41(20) suits may only be brought in the district if the amount sued for does not exceed $10,000. Thus, defendant argues that as the libel in the instant case asserts a claim far in excess of $10,000, under Sec. 250 suit may only be maintained in the United States Court of Claims.

The third exception is that the proceeding can not be maintained for recovery of items of claims other than the claim for just compensation (for loss of vessel) since it appears on the face of the libel that amounts in excess of such other items of claims have been paid to the libellant on account.[8]

■ 1. (a) That the binder was issued after the loss occurred is immaterial. Clearly at the time the insurance binder was issued all parties knew the vessel was a total loss as a result of disaster at sea. The Administrator, nevertheless, insured the vessel nunc pro tunc as of April 20, 1942, to the termination of the charter. This act of the Administrator shows an election on his part to deal with such losses as insurance losses rather than as claims based on requisition or on charter. In the usual case, an insurance company would not, of course, insure against a loss which had already occurred, but in the present case there would be liability in some form on the government. And in the present case it elected to assume insurance liability by the issuance of the binder. The government issued the binder with full knowledge of all the facts and in such a situation the court will not ordinarily re-make the bargain for the party in the absence of fraud or mistake. Cf. Insurance Company v. Lyman, 82 U.S. 664, 15 Wall. 664, 21 L.Ed. 246. I am, accordingly, of the opinion that the binder is a valid contract of insurance against the loss specified in it.

■ (b) The war risks binder is a contract of insurance. The government contends that the binder is not a contract of insurance because it is a restatement in different form of the obligation under the requisition to pay just compensation for the vessel in case it is lost. This position is unsound because the rights of the libellant are not the same in all particulars under the binder as they would be under the requisition. In other words, the charter and the binder issued pursuant to it are substituted for the libellant's right to receive full compensation under the Constitution. This substituted agreement conferred new and different rights upon the libellant and subjected it to new and different obligations. See Matson Navigation

[7] Sec. 1128d provides as follows:

"§ 1128d. Actions on claims for losses; jurisdiction of courts.

"In the event of disagreement as to a claim for losses or the amount thereof, on account of insurance under sections 1128-1128h of this title, an action on the claim may be brought and maintained against the United States in the district court of the United States sitting in admiralty in the district in which the claimant or his agent may reside, or in case the claimant has no residence in the United States, in a district court in which the Attorney General of the United States shall agree to accept service. Said suits shall proceed and shall be heard and determined according to the provisions of sections 741–752 of this title insofar as such provisions are not inapplicable and are not contrary to or inconsistent with the provisions of sections 1128–1128h of this title. * * *"

Secs. 741–752 referred to in the above quoted statute, are the provisions of the Suits in Admiralty Act, 1920, which authorize the filing of a libel in admiralty in personam against the United States of America and regulate procedure in such a suit.

[8] It appears from the binder that items other than loss of vessel were insured against. There is, however, no post-agreement that the money paid was paid on account of any particular items mentioned in the binder.

Co. v. United States, 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336. It is accordingly apparent that the binder and the charter created a valid contract of insurance and was not merely a restatement of a pre-existing obligation.

■ 2. This court has jurisdiction. The government contends that this court has no jurisdiction of the claims because the insurance (assuming the binder created a valid contract of insurance) was not for a fixed amount but was for just compensation to be determined in accordance with Sec. 902 of the Merchant Marine Act, 1936, as amended. The government, accordingly, construes this as a just compensation claim with jurisdiction exclusively in the Court of Claims. If the cases at bar had been instituted under Sec. 902 proper, the Court of Claims would have exclusive jurisdiction. But the procedural provisions of Sec. 902, contained in Sec. 902(d), giving jurisdiction to the Court of Claims when claims are made under that section, constitute only a small part of the provisions of Sec. 902. That section also contains provisions establishing principles under which valuations are to be arrived at in determining just compensation when claims are made under that section. Subsection (a), for example, provides that "in no case shall the value of property taken or used be deemed enhanced by the causes necessitating the taking or use." The section also contains provisions for the elimination of any claim for consequential damages. In short, Sec. 902 provides a formula for determining valuation. I am, therefore, of the opinion that when the agreements provide that in the event of loss and suit is instituted under Sec. 1128d just compensation is to be determined in accordance with Sec. 902 of the Merchant Marine Act, 1936, as amended; it was not intended to make the claim one for just compensation under Sec. 902, with a resultant exclusive jurisdiction in the Court of Claims to determine all such claims, but it was merely intended by the parties that they were to utilize the valuation formula set forth in that section.

■ Under Sec. 902 the Commission, as soon as practicable, shall determine just compensation. The government contends that since a person is given the right under Sec. 902 to sue in the Court of Claims after a determination of just compensation has been made by the Commission, the parties to the War Risks Binder and Charter agreement intended that such court should have exclusive jurisdiction and that there should be no right to maintain suit under Sec. 1128d, 46 U.S.C.A. There is certainly no express statement to that effect; and, at most, it would follow only as an inference from the language used. Assuming that a person can enter into a valid agreement that he will not sue in a certain jurisdiction, he should not be deprived of the right to maintain a suit pursuant to statutory authority unless an intent to give up this right appears by clear and satisfactory evidence and not by mere inference. I think that the proper construction of the language used by the parties to the War Risks Binder and Charter agreement in providing that just compensation shall be determined in accordance with Sec. 902 is that the parties intended to provide that just compensation "shall be determined and paid by the Commission as soon as practicable, but if the amount of just compensation determined by the Commission is unsatisfactory to the person entitled thereto, such person shall be paid 75 per centum of the amount so determined * * *." This is the only determination of just compensation required by Sec. 902. After such determination is made, a claimant has the right to maintain an action in the district court under the authority of Sec. 1128d, 46 U.S.C.A. This conclusion is re-enforced by the consideration that at the time of the enactment of the provisions alluded to there was no power to insure requisitioned vessels. Sec. 1128d (Sec. 225 of the Merchant Marine Act 1936, as amended) giving jurisdiction to the district court over claims based on insurance, is a part and parcel of the later Act creating the insurance and giving the Administrator the authority to insure requisitioned vessels. The contention of the government would nullify the provisions of Sec. 1128d which give the district court exclusive jurisdiction in respect of claims on account of insurance.[9] As stated before, that the amount of in-

---

9 United States v. Pfitsch, 256 U.S. 547, 41 S.Ct. 569, 571, 65 L.Ed. 1084, lends support to the conclusion reached here. There suit was brought in the district court under Sec. 10 of the Lever Act in a case where the President had requisitioned supplies during the last war. Secs. 12, 16 and 25 contained similar provisions to those of Sec. 902 (d) of the Merchant Marine Act of 1936, as amended, giving concurrent jurisdiction to the Court of Claims and to the dis-

surance is to be measured by the formula set up in Sec. 902 does not mean that the basic claim is made under that section. The claim is still an insurance claim. Since this is a claim on an insurance policy under Sec. 1128d, it is clear that the district court has jurisdiction. See Brady v. Roosevelt S. S. Co., 317 U.S. 575, 576, 63 S.Ct. 425, 87 L.Ed. 471; Johnson v. United States Shipping Board Emergency Fleet Corp., 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451; United States Shipping Board Emergency Fleet Corp. v. Rosenberg Bros. & Co., 276 U.S. 202, 48 S.Ct. 256, 72 L.Ed. 531; Cf. Matson Navigation Co. v. United States, 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336.

■ 3. The binder of insurance covered items other than the loss of the vessel; for example, crew life and injury insurance, insurance on crew effects and on consumable stores, slop chests, leased equipment, etc. The government under this exception argues that the sums paid were on account of such items which are other than for the loss of the vessel and that the only remaining claim is for loss of the vessel as a just compensation claim. This position is unsound for the libel specifically charges that the payments on account were made with respect to compensation for the loss of the vessel. The government apparently does not contest the right of the libellant to proceed in the district court on the insurance contract under Sec. 1128d for such claim as may be provable with respect to the categories of insurance other than for the loss of the vessel itself. This shows the fundamental unsoundness of the government's contention for the binder of insurance is not a divisible contract. If the libellant has the right to sue on such contract of insurance as to some of its items of coverage, it must also have the same right to sue with respect to the other items, i. e., for loss of the vessel.

■■ In connection with the recovery of the vessel "Bloom," an additional argument was made by the government. This argument is that in any event no action could be maintained under Sec. 1128d to recover insurance until after just compensation values have, in accordance with statutory direction, been determined by the Commission. If this argument be correct, libellant may never have the right to maintain an action as just compensation may never be determined by the Maritime Commission; or it may refrain from taking action until after apposite statutes of limitation have expired.

While I do not think this matter is properly now before me for determination, I shall, nevertheless, indicate my views. The determination by the Maritime Commission may be a condition precedent but it is a condition which may be waived. Certainly libellant is not required to run the risk of having its claim barred by the Statute of Limitations while the Maritime Commission ponders the question of just compensation for an indefinite period of time. An analogous situation is the usual appraisal clause in fire insurance contracts. The insurer and the insured are each required to appoint an appraiser to appraise the property destroyed and the making of the appraisal is usually a condition precedent to the maintaining of an action in court. But this condition may be waived as a result of delay, Boston Insurance Co. v. Kirby, Tex.Civ.App., 281 S.W. 275; Talbert v. Northwestern Nat. Ins. Co., 167 La. 608, 120 So. 24; a failure to make an appraisal through no fault of the insured, Security Printing Co. v. Connecticut Fire Ins. Co., 209 Mo.App. 422, 240 S.W. 263; Cowles v. Connecticut Fire Ins. Co., 113 Kan. 532, 215 P. 308; or a failure on the part of the insurer to demand an appraisal, Great American Co-op. Fire Ass'n v. Jen-

---

trict courts (where the claim is below $10,000). The case contains a discussion of Congressional grants of jurisdiction. In some instances jurisdiction has been given to the Court of Claims and in other instances it shows Congress has "conferred jurisdiction only in the District Courts." Mr. Justice Brandeis in pointing out that the jurisdiction conferred, for example, on the District Courts by the War Risk Insurance Act of May 20, 1918 (an Act authorizing the writing of insurance by the United States during the last war and giving jurisdiction to the District Courts) said

(256 U.S. at page 552, 41 S.Ct. at page 570, 65 L.Ed. 1084): "Furthermore, it is significant that this is not the only occasion upon which Congress has provided for suits against the United States exclusively in the District Courts. Section 1 of the War Risk Insurance Act of May 20, 1918, c. 77, 40 Stat. 555, provides that suits upon insurance policies 'may be brought against the United States in the District Court of the United States in and for the district in which such beneficiaries or any one of them resides.' "

kins, 11 Ga.App. 784, 76 S.E. 159. See also Norwich Union Fire Ins. Society, Ltd., et al. v. Cohn, 10 Cir., 1933, 68 F.2d 42, 44, and Couch Cyclopedia of Insurance Law, Volume 7, Sec. 1615. I think, therefore, that the condition precedent of determination by the Commission is a condition which may be waived, but I express no opinion as to whether the condition has been waived in the cases at bar.

An appropriate order should be submitted overruling the exceptions and ordering the United States to answer the amended libel on the merits.